In re Glennette Leann **WODARK,**
also known as Glennette L.
Stough, Debtor.

Thaddeus P. Wodark, Plaintiff–
Appellee,

v.

Glennette Leann Wodark,
Defendant–Appellant.

BAP No. CO–09–049.
Bankruptcy No. 07–16394.
Adversary No. 09–01161.

United States Bankruptcy Appellate Panel
of the Tenth Circuit.

March 22, 2010.

W. Robert Montgomery, Lakewood, CO, for Appellant.

John H. Barrett of Balis & Barrett, P.C., Boulder, CO, for Appellee.

Before CORNISH, Chief Judge, NUGENT, and KARLIN, Bankruptcy Judges.

## OPINION

NUGENT, Bankruptcy Judge.

Debtor Glennette Leann Wodark ("Glennette") appeals from a summary judgment order holding that a marital debt to a third party assumed by her in a separation agreement is excepted from her discharge by 11 U.S.C. § 523(a)(15).[1] After oral argument and careful review of the record, we AFFIRM.[2]

### I. Appellate Jurisdiction and Standard of Review

This Court has jurisdiction over this appeal. Appellant timely filed her notice of appeal from the bankruptcy court's final order and the parties have consented to this Court's jurisdiction because they have not elected to have the appeal heard by the United States District Court for the District of Colorado.[3]

We review the bankruptcy court's order *de novo* because there are no factual disputes and the issues on appeal pertain to the proper application of bankruptcy statutes and interpretation of case law.[4]

---

1. All future references to "Section" or " § " are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, unless otherwise noted.

2. This Court heard oral argument in this case on January 26, 2010.

3. 28 U.S.C. § 158(b); Fed. R. Bankr.P. 8001(e); Fed. R. Bankr.P. 8002(a).

4. *See In re Albrecht*, 233 F.3d 1258, 1260 (10th Cir.2000); *Manchester v. Annis (In re Annis)*, 232 F.3d 749, 751 (10th Cir.2000).

## II. Factual Background

Appellant Thaddeus P. Wodark ("Thaddeus") and Glennette were legally separated in Colorado on June 28, 2006. In paragraph 6 of their Decree of Legal Separation ("Separation Decree"), the state court referenced the Wodarks' separation agreement, found it to be "not unconscionable," and incorporated it into the decree. The agreement was made on a check-the-box and fill-in-the-blanks form promulgated by the Colorado state courts. The form contains a series of sections related to maintenance, various types of property ownership, and debts. Each section has an introductory provision for the parties to indicate whether the parties agree or do not agree on an issue. After that initial statement, the parties may then check various boxes stating that the parties have no such property or that it has been satisfactorily divided between them. Spaces are given for expanding on the nature and extent of these agreements.

The separation agreement was dated on or about March 6, 2006.[5] In each section, the Wodarks checked the "both parties agree on this issue" box. As to real estate, vehicles, personal property, and accounts, they checked the subsidiary box stating that they owned no such property. Only section 6 relating to debts is different. There, the parties checked the "both parties agree" box. The agreement then provides subsidiary boxes to be checked; one indicating the parties have no unpaid marital debt and the other indicating that the marital debts are to be paid by specific parties as set forth thereunder. The Wodarks checked neither of these boxes. Below the boxes are spaces marked "Husband" and "Wife" where the debts to be paid by each are to be described by the name of the creditor. Nothing is written in the space by "Husband." By "Wife," however, someone hand-printed the following:

HOME EQUITY LINE OF CREDIT
CHASE
ACC# * * * * * * * * * *6720
BAL. 44,803.22
PAYMENT 500.00 MONTH

This is the only interlineated language on the entire separation agreement. Below "Wife" is the sentence: "The party responsible for the debts ☐ will ☐ will not (check one) indemnify the other party and hold him/her harmless for those debts." The Wodarks checked neither box.[6]

Glennette filed her Chapter 7 petition on June 19, 2007 and received a discharge on September 27, 2007. Glennette stopped paying the Chase debt after February 26, 2007 and Thaddeus has been paying it ever since. Thaddeus filed this adversary proceeding on March 23, 2009, seeking a determination that Glennette's obligation to pay Chase was a nondischargeable debt to him under § 523(a)(15). In her answer, Glennette claimed that she owed Chase the debt, not Thaddeus, and that her obligation to Chase had been discharged.

The bankruptcy court granted Thaddeus's motion for summary judgment and relied on another Colorado bankruptcy court decision, *In re Burckhalter*.[7] The bankruptcy court concluded that even though Chase was owed the debt, because the ex-spouse was the intended beneficiary of Glennette's payments to Chase and be-

---

**5.** Neither party to the agreement dated their signature. The notary indicated the agreement was subscribed and sworn to before [her] on "[the] 6th." *Separation Agreement, in* Appellant's Appendix at 44. The agreement was filed with the state court on March 13, 2006. The date the agreement was signed is not material.

**6.** *Id.* at 38–44.

**7.** *Burckhalter v. Burckhalter (In re Burckhalter)*, 389 B.R. 185 (Bankr.D.Colo.2008).

cause her obligation to Thaddeus was fully enforceable by a Colorado domestic court, it was a debt to a former spouse that is excepted from discharge by § 523(a)(15). This appeal followed.

## III. Discussion

The issue on appeal is whether an agreement to pay a pre-existing marital debt owed to a third party that is embodied in a domestic court order, but omits an express hold harmless or indemnification agreement, is a debt "to a former spouse" that is excepted from discharge by § 523(a)(15). Glennette argues the bankruptcy court erred in finding that the agreement created a debt that she owed to her former spouse. Instead, she maintains that she has no obligation to Thaddeus for the debt because no one checked the indemnity/hold harmless box, and both she and Thaddeus incurred the debt to Chase, not one another. She argues the plain language of § 523(a)(15) requires that the debt be owed "to a spouse." She contends the *Burckhalter* decision is misguided because it may lead to unintended consequences.[8] In addition, she complains that the bankruptcy court further erred when it did not set limits to the relief that Thaddeus or other parties could seek in the judgment entered below.[9] We disagree.

### A. BAPCPA's Amendments to §§ 523(a)(5) and (a)(15)

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), courts were divided on the matter of whether debts delegated to divorcing/separating spouses in separation agreements or divorce decrees without express hold harmless or indemnification provisions were excepted from discharge under § 523(a)(15). Some courts held that an express hold harmless clause must be present to create direct liability from the debtor to the former spouse.[10] Other courts held that separation agreements created an obligation on the part of the debtor to the non-debtor spouse even in the absence of an express indemnity or hold harmless clause.[11]

▪ Glennette argues that the addition of the words "to a spouse" to § 523(a)(15) is significant because all of the cases that held such obligations nondischargeable without indemnification or hold harmless provisions predate BAPCPA.[12] We discount the significance Glennette attributes to the language change in §§ 523(a)(5) and (15).[13] On its face, § 523(a)(15) merely excepts from discharge marital obligations that are owed by a debtor to her non-debtor spouse. What matters in a § 523(a)(15) case is (1) the nature of the

---

**8.** Appellant's Brief, ¶¶ 28 and 39, at 8 and 10.

**9.** Appellant's Brief, ¶¶ 27, 32, 38 and 40, at 8–10.

**10.** *Stegall v. Stegall (In re Stegall)*, 188 B.R. 597, 598 (Bankr.W.D.Mo.1995) (section 523(a)(15) inapplicable because no hold harmless or indemnification provision in either decree or property settlement agreement); *McCracken v. LaRue (In re LaRue)*, 204 B.R. 531, 534 (Bankr.E.D.Tenn.1997) (same); *McKinnis v. McKinnis (In re McKinnis)*, 287 B.R. 245, 257 (Bankr.E.D.Mo.2002) (express provision required).

**11.** *Gibson v. Gibson (In re Gibson)*, 219 B.R. 195, 205 (6th Cir. BAP 1998) (express provi-

sion not required); *Ruhlen v. Montgomery (In re Montgomery)*, 310 B.R. 169, 180 (Bankr. C.D.Cal.2004) (same); *Woszczyna v. Woszczyna (In re Woszczyna)*, 295 B.R. 425, 429 (Bankr.D.Conn.2003) (same); *Crawford v. Osborne (In re Osborne)*, 262 B.R. 435, 442 (Bankr.E.D.Tenn.2001) (same); *Johnston v. Henson (In re Henson)*, 197 B.R. 299, 303 (Bankr.E.D.Ark.1996) (same).

**12.** Appellant's Reply Brief, ¶ 13, at 4.

**13.** We found no post-BAPCPA published case that addresses the significance of the "to a spouse" addition.

debt; and (2) whether the debt was incurred in the course of a divorce or separation.[14] The fact that the underlying obligation was payable to Chase does not mean that Glennette did not incur a separate obligation to Thaddeus that is, in itself, a nondischargeable debt.

■ One of Congress's overarching themes in enacting BAPCPA was to redefine and reinforce the ability of non-debtor former spouses to recover both support and property settlement obligations from debtors in bankruptcy. The amendments to the § 523(a)(15) language cannot be viewed in a vacuum because the remedy provided in that subsection was formerly tied to the language of § 523(a)(5).

Former § 523(a)(5) excepted from a debtor's discharge debts—

> to a spouse ... for alimony to, maintenance for, or support of such spouse ... in connection with a separation agreement. . . .

Former § 523(a)(15) excepted from discharge a debt—

> not of a kind described in paragraph (5) that is incurred by the debtor in ... connection with a separation agreement. . . .

If the non-debtor spouse could demonstrate that the debtor could pay the debt or that the benefit the debtor received by obtaining a discharge would be outweighed by the harm to the non-debtor if the debtor did not pay, the debt was excepted from discharge. While it is true that former § 523(a)(15) did not contain the words "to a spouse," the subsection referenced debts "to a spouse" that were not "of the kind described in paragraph (5)"—in other words, debts that were neither support nor maintenance. It did, as it does today, refer to non-support debts that the debtor

incurred in connection with a separation agreement.

The current version of § 523(a)(5) simply excepts from discharge debts "for a domestic support obligation," a very broad term that is specifically defined at length in § 101(14A) and includes support debts that are "owed to or recoverable by a spouse" and "established" in a separation agreement. The current version of § 523(a)(15), excepts from discharge a debt—

> to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce ... in connection with a separation agreement. . . .

With the expansive change in § 523(a)(5), Congress needed to add the words "to a spouse" to § 523(a)(15) because that language had been stricken from (a)(5). Nothing in § 523(a)(15) addresses the presence or absence of indemnification provisions.

## B. The Burckhalter Analysis

We agree with the bankruptcy court that the analysis in Burckhalter is applicable to this case, not least because the facts are nearly identical. In Burckhalter, the debtor and non-debtor spouse executed the same "check-the-box" form separation agreement the parties used in this case. The agreement was incorporated into their Separation Decree. In the agreement, the debtor agreed to pay a joint credit card debt, but neither the debtor nor the non-debtor checked the hold harmless box.

The Burckhalter court concluded that because separation agreements become a part of the decree, they are no longer susceptible to contract interpretation and may be enforced using post-judgment remedies as outlined in Colorado Revised Statute § 14–10–112(5).[15] Because the other

14. *Montgomery,* 310 B.R. at 177.

15. *Burckhalter v. Burckhalter (In re Burckhalter),* 389 B.R. 185, 189 (Bankr.D.Colo.2008).

spouse may invoke those remedies in domestic court, the spouse's right of enforcement forms the basis for a "claim." In the bankruptcy code, a claim is defined as a right to payment or to an equitable remedy.[16] A debt is defined as a liability on a claim.[17] Accordingly, the non-debtor spouse's right to enforce the decree "gives rise to a right to payment," and is a debt that the debtor spouse incurs in connection with the separation agreement.

■ Glennette argues *Burckhalter* disregards the plain language of § 523(a)(15) by looking beyond the separation agreement to applicable state law to establish that the debtor owed a nondischargeable debt to her former spouse. Glennette contends *Burckhalter* improperly expands the definition of "debts to a spouse" to include debts owed to a third party creditor. Glennette insists that she incurred no debt to Thaddeus. She argues that once it is clear that the agreement lacks an indemnity or hold harmless language, it should be discharged because the plain language of § 523(a)(15) requires the debt be owed to a former spouse, not a third party. In short, she argues that if there is no indemnity or hold harmless provision, she owes no debt to Thaddeus. We see several flaws in this analysis.

Because Glennette was already obligated to pay the home equity line of credit, the idea that her agreement to pay was solely to benefit Chase renders that term mere surplusage. Glennette already owed Chase before she signed the separation agreement. When she signed the agreement, she undertook to do more than simply restate her obligation to Chase. Chase

was not a signatory to the separation agreement and nothing in it altered the Wodarks' contractual relations with Chase, though it significantly altered their legal relationship with one another. Glennette's agreement to pay Chase contained in the separation agreement had to have some legal import beyond simply restating her debt to the third party creditor.

■ The bankruptcy court's analysis need not be limited to the four corners of the separation agreement. As noted above, Colorado law declares that enforcement of these agreements is not subject to contract law. The agreement was part of a separation proceeding. It was incorporated into the Separation Decree. "It is well established that, absent an overriding federal provision, both the creation and enforceability of obligations imposed in connection with orders entered in divorce proceedings are governed by state law."[18] The bankruptcy court properly looked at Colorado law in determining whether a debt had been incurred that satisfied the qualifying language of § 523(a)(15).[19]

As the bankruptcy court noted, Thaddeus has a state statutory remedy to enforce his rights under the separation agreement as a judgment. Colorado Revised Statute § 14–10–112(1) provides that separating spouses may enter into a separation agreement to "promote the amicable settlement of disputes." The domestic court then reviews the separation agreement to determine whether it is unconscionable. If the agreement is found not unconscionable, the court approves it and, except where the parties agree otherwise,

---

**16.** § 101(5).

**17.** § 101(12).

**18.** *Hazelton v. Hazelton (In re Hazelton),* 304 B.R. 145, 154 (Bankr.M.D.Pa.2003) (citing *Grogan v. Garner,* 498 U.S. 279, 283–84, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). *See also*

*Gibson v. Gibson (In re Gibson),* 219 B.R. 195, 203 (6th Cir. BAP 1998).

**19.** *See Gibson,* 219 B.R. at 203 (analysis of applicable non-bankruptcy law is required in determining whether a debt falls within ambit of § 523(a)(15)).

the agreement becomes part of the decree.[20] The terms of the agreement that are referenced or set forth in the decree become part of the court's judgment and are enforced as a judgment and not as a contract.[21] A contempt citation is among the remedies an aggrieved party may seek.[22] Because state law affords Thaddeus a means of enforcing the separation agreement as part of a judgment, he has a right to payment that is a "debt" that Glennette incurred in connection with the separation agreement.

## C. The Scope of the Nondischargeability Judgment

The bankruptcy court concluded: "The Chase Debt, as reflected in the Separation Agreement, incorporated by the Decree of Legal Separation ... dated June 28, 2006, is a nondischargeable debt under 11 U.S.C. § 523(a)(15) in [Glennette's] chapter 7 [case]."[23] Glennette claims the bankruptcy court's summary judgment order is too broad because it makes the debt nondischargeable for any purpose by failing to state that only Thaddeus may invoke the state court enforcement remedies upon which his claim is based, and that this omission may lead to unintended consequences.[24] She posits that Chase might sue both her and Thaddeus for judgment on the line of credit or, if Thaddeus were also to file a bankruptcy petition, there is a potential for cross-claims for contempt.[25] While it is true that Chase could still obtain a judgment on its underlying claim against Thaddeus, Glennette's discharge would prevent Chase from proceeding against her in any manner.

The bankruptcy court concluded that Thaddeus is the intended beneficiary of the obligation created by the separation agreement and that Thaddeus could enforce that agreement in domestic court according to Colorado law. The order creates no rights for parties other than Thaddeus. What has been excepted from Glennette's discharge is her obligation to Thaddeus to pay the Chase debt for his benefit. Because she incurred that debt in connection with a separation agreement, it is excepted from her discharge under § 523(a)(15) even though her direct obligation to Chase has been discharged.

## IV. Conclusion

We conclude that Thaddeus was entitled to summary judgment excepting from discharge Glennette's obligation to him to pay the couple's marital obligation to Chase. Accordingly, we AFFIRM the judgment of the bankruptcy court.

---

20. Colo.Rev.Stat. § 14–10–112(4).

21. Colo.Rev.Stat. § 14–10–112(5).

22. *Id.*; *In re Marriage of Meisner,* 807 P.2d 1205, 1208 (Colo.App.1990) (If a separation agreement is incorporated into a decree of dissolution, the agreement is superseded by the decree, and enforcement of the agreement is governed by the remedies available for the enforcement of a judgment.); *In re Marriage of Nussbeck,* 974 P.2d 493, 497 (Colo.1999) (A trial court that acquires jurisdiction in dissolution proceedings has the authority to impose contempt sanctions to enforce obedience of its orders.).

23. *Order* at 4, in Appellant's Appendix at 70.

24. Appellant's Brief, ¶¶ 38 and 39, at 10.

25. Appellant's Brief, ¶¶ 39 and 40, at 10.