In re the MARRIAGE OF Craig WEIS, Petitioner

and

Melanie Weis, n/k/a Melanie Bergeron, Respondent.

No. 09SA216.

Supreme Court of Colorado, En Banc.

June 7, 2010.

Radabaugh, Barker & Callison, Ltd., Richard D. Radabaugh, Mark H. Barker, Richard Callison, David G. Berry, Colorado Springs, Colorado, Attorneys for Petitioner Melanie Weis, n/k/a Melanie Bergeron.

Cross & Bynum, LLC, Thomas R. Cross, Lauren C. Bynum, Colorado Springs, Colorado, Attorneys for Respondent Craig Weis.

Justice EID delivered the Opinion of the Court.

We issued a rule to show cause pursuant to C.A.R. 21 to determine whether the trial court erred in imposing contempt sanctions against Melanie Bergeron, a chapter 13 bankruptcy debtor, for her failure to pay credit card debts that she jointly owed with her former spouse Craig Weis and was required to pay by her divorce decree. The trial court found that the automatic stay of collection actions that applies in bankruptcy did not apply in Bergeron's case because the contempt proceedings against her fit within two exceptions to the stay—one applicable to "the collection of a domestic support obligation from property that is not property of the [bankruptcy] estate," 11 U.S.C. § 362(b)(2)(B) (2006), and the other for criminal actions, 11 U.S.C. § 362(b)(1). We now hold that the trial court erred in finding that the contempt proceedings fell within these two exceptions.

As to the first exception, we find that while the trial court properly characterized Bergeron's obligation to pay the two credit card debts under her divorce decree as a "domestic support obligation," there is no evidence that such an obligation could be collected from "property that is not property of the [bankruptcy] estate," as required by title 11, section 362(b)(2)(B). In fact, the trial court specifically found that Bergeron could not pay the debts at the time that the contempt sanction was imposed. As to the second exception, we find that the contempt proceedings were civil, rather than criminal, in nature, as the contempt 1) could be purged if Bergeron paid the money owed; 2) was imposed to vindicate the interests of a third party, rather than the dignity of the court; and 3) was not supported by the factual finding that Bergeron was able to pay the debt, a finding required by *In re Marriage of Nussbeck*, 974 P.2d 493, 498 (Colo.1999). Because neither exception is applicable, the contempt proceedings were barred by the auto-

matic stay. Accordingly, we vacate the trial court's contempt sanction and make our rule absolute.

## I.

Melanie Bergeron and Craig Weis divorced on October 12, 2006. Their Separation Agreement ("Agreement") provided that, upon sale of the marital home, Weis was to give Bergeron $65,000 from the sale proceeds. From that amount, Bergeron agreed to pay in full certain credit card debts for which Weis was jointly liable.[1] The house was sold in April 2007. Bergeron received $65,000 less set-offs, or approximately $60,000 in total. Bergeron used a portion of the funds to pay off one of the credit card debts she had agreed to pay. Two others remained unpaid.

In late 2007, an assignee of one of the unpaid debts named Weis in a collection action. As a result, on November 28, 2007, Weis sought a contempt citation against Bergeron for her failure to pay the debt. On February 22, 2008, he sought a second contempt citation related to another debt that Bergeron had agreed to pay but that had remained unpaid. The trial court found that Weis was subject to judgments for garnishment as a result of these unpaid debts. Weis sought both remedial and punitive sanctions against Bergeron, alleging, among other claims, that instead of paying the credit card debts, she had loaned $25,000 of the money to her new husband and had bought a $20,000 certificate of deposit in his name.

Shortly after Weis initiated the second proceeding, on March 7, 2008, Bergeron filed a chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of Nevada. Her credit card debts, including the two over which Weis sought contempt citations, were listed on her bankruptcy application. She indicated on the application that she had no co-debtors. Bergeron claims that she is currently making payments through a five-year chapter 13 payment plan on these two debts as well as on her other debts. While Bergeron participates in this payment plan, an automatic stay will prevent credit card companies from pursuing collection actions against her. The automatic stay partially protects co-debtors, as well. *See* 11 U.S.C. § 1301(a) (2006).

The trial court held a hearing on the contempt issues in May 2008. On June 20, 2008, Bergeron failed to appear at a continuation of the hearings. A minute order was entered holding Bergeron in contempt of court, issuing a judgment against Bergeron for the two unpaid debts, and awarding attorney's fees for the contempt proceedings. On August 18, 2008, the court issued an order *nunc pro tunc* to June 20, 2008, elaborating on the judgment. The order stated that Bergeron had acted willfully, as she had received the $60,000 and had not used it to pay the debts. The court also stated that, "to vindicate the dignity of the Court," Bergeron had to personally appear before it.

Eight months after the issuance of this order, in April 2009, Bergeron attempted to vacate the contempt order. She argued that the automatic stay that applies in bankruptcy, *see* 11 U.S.C. § 362(a), prohibited actions to pursue payment. On July 24, 2009, the trial court judge found that the automatic stay did not apply to the contempt proceedings. It stated that the proceedings fell within two exceptions to the automatic stay—one that applies to criminal proceedings, *see* 11 U.S.C. § 362(b)(1), and one that applies to the collection of domestic support obligations against property that is not part of the bankruptcy estate, *see* 11 U.S.C. § 362(b)(2)(B).

The language of the Agreement was contradictory with regard to the domestic support issue; in one part, it described the $65,000 payment, part of which had to be applied to credit card debt, as a "property settlement." However, the trial court found that the obligation to pay the credit card debt was a domestic support obligation, based on language in the Agreement that referred to a "waiver of spousal maintenance . . . in consideration" for undertaking the debt obligations and on the fact that the parties described the joint debts as "nondischargeable under 11 U.S.C. [§ ] 523(a)(5), as

---

1. In part, the Agreement stated that Bergeron agreed to "be solely responsible for payment," to "hold [Weis] harmless," and to "indemnify [Weis]" as to the credit card debts.

support in the event that bankruptcy" was filed by either Weis or Bergeron. Accordingly, the court found that the obligation to pay the credit card debts from the proceeds of the house sale was "specifically in the nature of support" and thus that the proceedings fit within a statutory exception to the automatic stay.

The trial court further noted that the proceeding "was quasi criminal because a punitive sanction was requested" and because "those procedural safeguards that apply to criminal matters apply when a punitive contempt sanction is requested." Additionally, the trial court found that Bergeron had been able to and willfully refused to pay the debts, although it acknowledged that she was not then presently able to pay. She was sentenced to sixty days in jail for contempt. The trial court denied a stay of execution of the jail sentence pending appeal unless Bergeron posted a $55,420 supersedeas bond, the amount that the judge calculated Bergeron then owed Weis.[2]

The court also noted that attorney's fees were appropriate because the proceedings involved "enforcement remedies." It stated that Bergeron had "made personal choices" and had "totally disregarded the impact on [Weis] and her son ...." Despite its findings as to the "severely egregious" nature of Bergeron's actions, the court stated that it "would entertain a request for reconsideration in the event that [Bergeron] is able to come up with" part of the amount owed to Weis.[3]

Bergeron filed a Petition for a Rule to Show Cause pursuant to C.A.R. 21, seeking a reversal of the contempt order and arguing that the automatic stay barred the trial court's actions. We issued a rule to show cause.

We now find that, while the trial court properly characterized Bergeron's obligation to pay the credit card debts as a "domestic

support obligation," there is no evidence that her obligations could be met from "property that is not property of the [bankruptcy] estate," 11 U.S.C. § 362(b)(2)(B). In fact, while imposing the contempt sanction, the trial court specifically found that Bergeron was not able to pay the debts. We also find that the contempt proceedings were civil, rather than criminal, in nature, as the contempt 1) could be purged if payments were made; 2) was imposed to vindicate the interests of Weis, as a third party, rather than the dignity of the court; and 3) was not supported by the factual finding required by *In re Marriage of Nussbeck*, 974 P.2d at 498, that Bergeron could pay the debt. Given that neither exception is applicable, the contempt proceedings were barred by the automatic stay. Accordingly, we vacate the trial court's contempt sanction and make our rule absolute.[4]

## II.

■ Debtors who file bankruptcy obtain broad protections against most civil claims. Filing bankruptcy triggers an automatic stay, "applicable to all entities, of ... the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor...." 11 U.S.C. § 362(a). This stay applies to numerous categories of actions by creditors, including "any act to collect, assess, or recover a claim against the debtor...." 11 U.S.C. § 362(a)(6). In other words, "the automatic stay suspends any non-bankruptcy court's authority to continue judicial proceedings then pending against the debtor." *In re Vierkant*, 240 B.R. 317, 321 (B.A.P. 8th Cir.1999) (quotation and quotation marks omitted). This stay is designed to help ensure that debtors receive a "fresh start." *E.g., In re Grynberg*, 143 B.R. 574, 576–77 (D.Colo.1990) (quotation omitted). It is also designed to protect the various creditors who may be competing for a debtor's

---

**2.** The Minute Order described the amount of the bond simply as $55,000.

**3.** The court made no findings regarding the need to vindicate the dignity of the court during its July 24, 2009 ruling, although it did note in denying suspension of the sentence that Bergeron had "flagrantly disobeyed" its order.

**4.** The trial court addressed child custody and support issues contemporaneously with the contempt issues. These issues were not raised to this court, and we do not address them here.

limited assets. *See Ostano Commerzanstalt v. Telewide Sys., Inc.,* 790 F.2d 206, 207 (2d Cir.1986) (citation omitted) (noting that debtors cannot waive the automatic stay because the stay is designed "to protect creditors as well as the debtor").

Federal law provides limited exceptions to the automatic stay. Relevant here, filing bankruptcy will not stay a criminal action. 11 U.S.C. § 362(b)(1). Nor will the stay operate with regard to "the collection of a domestic support obligation from property that is not property of the estate . . . ." 11 U.S.C. § 362(b)(2)(B). The automatic stay is "broadly construed," while exceptions to the stay are "narrowly construed." *In re Honeycutt,* 228 B.R. 428, 430 (Bankr.E.D.Ark. 1998) (citations omitted); *In re First Alliance Mortgage Co.,* 263 B.R. 99, 106 (B.A.P. 9th Cir.2001) ("[E]xceptions to the automatic stay . . . are read narrowly." (citation omitted)).

In this case, the trial court found that the proceedings fit within both the exception for the collection of certain domestic support obligations and the exception for criminal proceedings. We address first the issue of domestic support and second the issue of the criminal proceedings exception. We conclude that neither exception is applicable and that therefore the trial court's contempt sanction violated the automatic stay.

### A.

The trial court found that the funds sought were in the nature of domestic support and that the contempt proceedings thus fit within a statutory exception to the automatic stay for "the collection of a domestic support obligation from property that is not property of the estate . . . ." 11 U.S.C. § 362(b)(2)(B). We find that, while the trial court properly determined that the credit card debts Bergeron was obligated to pay under the divorce decree were in the nature of a "domestic support obligation," there is

no evidence that such an obligation could be collected from "property that is not property of the [bankruptcy] estate" as required by title 11, section 362(b)(2)(B). The exception to the automatic stay for the collection of domestic support obligations against non-estate property therefore does not apply.

As the trial court recognized, domestic support obligations are treated differently than many other debts in bankruptcy. For example, they are given priority over many other kinds of debts, *see* 11 U.S.C. § 507(a)(1)(A) (2006), and they are not dischargeable in bankruptcy, 11 U.S.C. § 523(a)(5) (2006). However, the collection of a domestic support obligation is generally still subject to the automatic stay during the pendency of a chapter 13 bankruptcy unless payment is sought from "property that is not property of the [bankruptcy] estate . . . ." 11 U.S.C. § 362(b)(2)(B).[5]

A "domestic support obligation" is defined as a debt that is 1) "owed to or recoverable by" a "former spouse" (among others), 2) that is "in the nature of alimony, maintenance, or support" of such "former spouse," and 3) that was established by a divorce decree or court order. 11 U.S.C. § 101(14A) (2006). The debt in question here—Bergeron's obligation to pay the two credit card debts—meets both the first and last requirements. As to the first, we note that the credit card debt is owed to the credit card companies or their assignees, not Weis. However, by assuming in the Agreement the obligation to pay the debt owed to the credit card companies and by agreeing to hold Weis harmless for the debt, Bergeron created a new debt that she owes Weis as a "former spouse." *See, e.g., In re Wodark,* 425 B.R. 834, 837 (B.A.P. 10th Cir.2010) (finding debtor's obligation to pay joint credit card debt was debt owed to former spouse even where there is no express hold harmless or indemnification agreement). The last requirement is also satisfied, as Bergeron's obligation to pay is contained in a separation agreement

---

5. Congress has allowed a few other acts involving domestic support obligations to be excepted from the stay during bankruptcy. Domestic support obligations can be established or modified, 11 U.S.C. § 362(b)(2)(A)(ii), the debtor's income may be withheld to pay domestic support obligations during bankruptcy, 11 U.S.C. § 362(b)(2)(C), and the debtor's failure to pay domestic support obligations can be reported to consumer reporting agencies, 11 U.S.C. § 362(b)(2)(E).

that was later incorporated into a divorce decree.

As to the second requirement—that the debt be in the nature of a domestic support obligation—the trial court concluded that the obligation to pay the two credit card debts was in the nature of support, rather than a property settlement. We agree.

■ In deciding whether a debt is in the nature of support or a property settlement, a court must consider "whether the parties intended the obligation to be for support." *In re Cotten*, 318 B.R. 583, 585–86 (Bankr. W.D.Okla.2004) (citing *In re Sampson*, 997 F.2d 717 (10th Cir.1993)). Factors courts take into account include the parties' written agreement and the circumstances of the parties "at the time of the divorce." *Id.* (citing *Sampson*, 997 F.2d at 723–25).

■ The Agreement contains language that is somewhat contradictory as to whether the obligation to pay the credit card debts was in the nature of support, rather than a property settlement. For example, the Agreement states that the $65,000 from the proceeds from the home sale was Bergeron's "property settlement." However, the Agreement also specifies that Bergeron was to use those proceeds to pay off the two credit card debts, and that while the parties waived spousal maintenance, that waiver was "consideration" for taking on debt obligations. And in a portion of the Agreement that specifically addresses bankruptcy, the parties stated that "any joint debt is nondischargeable under 11 U.S.C. [§ ] 523(a)(5), as *support* in the event that bankruptcy is filed by either party." (Emphasis added). Taken as a whole, these statements suggest that even though the parties waived maintenance in the form of a direct payment to the other party, they intended to treat Bergeron's obligation to pay the two credit card debts as domestic support. *See, e.g., In re Cotten*, 318 B.R. at

586 (concluding that debt obligation was support based in part on language in divorce decree stating that debt would be nondischargeable as support in bankruptcy). We therefore agree with the trial court that the obligation to pay the two credit card debts was in the nature of domestic support.

Collection proceedings will be exempt from the automatic stay under title 11, section 362(b)(2)(B), however, only if they involve "collection of a domestic support obligation *from property that is not property of the [bankruptcy] estate* ...." (Emphasis added). In this case, Bergeron filed for chapter 13 bankruptcy, under which the debtor participates in a three- to five-year payment plan designed to pay all or a portion of what is owed to each creditor. Upon successful completion of the plan, the debtor will receive a discharge of most types of debts. *See* 11 U.S.C. § 1328 (2006).

Under chapter 13, the bankruptcy estate that is created once the debtor files is quite broad. The debtor's earnings during the payment period become part of the estate as she earns them. 11 U.S.C. § 1306(a)(2) (2006). Other funds that the debtor obtains during the period of her payment plan, including rent, insurance proceeds, and bequests, also become part of the estate, 11 U.S.C. § 1306(a)(1); 11 U.S.C. § 541 (2006), and must be applied to debts as specified within the bankruptcy payment plan.[6] Thus, when a debtor files bankruptcy under chapter 13, there generally will be no non-estate funds that a creditor could attempt to reach. *See, e.g., In re Rodriguez*, No. 09–13222, 2010 WL 597224, at *3 (11th Cir. Feb.22, 2010) (quoting *Carver v. Carver*, 954 F.2d 1573, 1577 (11th Cir.1992)); *In re Reynard*, 250 B.R. 241, 249 (Bankr.E.D.Va.2000); *Farmer v. Cole*, 150 B.R. 68, 69 (Bankr.N.D.Ala.1991); William Houston Brown, *Bankruptcy and Domestic Relations Manual*, § 3:5(e) (2009).[7]

---

**6.** An appointed trustee, 11 U.S.C. § 1302 (2006), controls the disbursement of the debtor's funds "as is necessary for the execution of the plan...." 11 U.S.C. § 1322(a)(1) (2006); *see also* 11 U.S.C. § 1302(b)(3).

**7.** There is authority suggesting that once a chapter 13 plan is confirmed, the estate will effectively vanish, as the property of the estate becomes

vested in the debtor and removed from the estate upon confirmation. *See, e.g., In re Dagen*, 386 B.R. 777 (Bankr.D.Colo.2008). Under this approach, *Dagen* indicates that the confirmed plan itself will function in lieu of the automatic stay to bar collection of pre-petition support debts, *id.* at 783, making the result under that analysis the same as the one we arrive at here.

Therefore, as a general matter, Bergeron, as a chapter 13 debtor, is unlikely to possess any non-estate funds. As the Eleventh Circuit has explained, the exception for collection of domestic support obligations from non-estate property "strikes a balance between the goals of protecting the bankruptcy estate from premature disbursement and protecting the spouse and children of the debtor." *Carver*, 954 F.2d at 1577.

The trial court did not inquire into whether any non-estate funds exist against which a domestic support obligation could be collected. However, in addressing Bergeron's Motion to Vacate, the court did find that Bergeron was then unable to pay the two credit card debts. In other words, there appear to be no funds that are currently available to pay the domestic support obligation at all, let alone non-estate funds.[8] Under these circumstances, we find that the trial court erred in finding that the exception to the automatic stay for enforcement of domestic support obligations applied in this case. *See Sternberg v. Johnston*, 595 F.3d 937, 944 (9th Cir.2010) ("The state court order was in violation of the stay because ... it ordered [the debtor] to pay arrears or go to jail without focusing on [the debtor's] non-estate property." (citations omitted)).[9] In sum, while the trial court properly characterized the obligation at issue in this case as one for domestic support, there is no evidence in this case that non-estate funds are available to pay the obligation, and therefore the exception to the automatic stay does not apply.

### B.

We next address whether the trial court's contempt finding fits within the exception to the automatic stay for criminal proceedings under title 11, section 362(b)(1). We find that the contempt sanction in this case was in the nature of civil, rather than criminal, contempt, and that therefore the exception for criminal proceedings does not apply.

Colorado statutes label contempt as "remedial" or "punitive." *See* C.R.C.P. 107. "Punitive" sanctions involve "[p]unishment by unconditional fine, fixed sentence of imprisonment, or both, for conduct that is found to be offensive to the authority and dignity of the court." C.R.C.P. 107(a)(4). "Remedial" sanctions are "[s]anctions imposed to force compliance with a lawful order or to compel performance of an act within the person's power or present ability to perform." C.R.C.P. 107(a)(5). Proceedings that involve a remedial purpose are civil, while those designed to "vindicate the dignity of the court by punishing the contemnor" involve criminal contempt. *People v. Barron*, 677 P.2d 1370, 1372 n. 2 (Colo.1984) (citations omitted).

We have further defined criminal contempt as "conduct that obstructs the administration of justice or tends to bring the court into disrepute." *Barron*, 677 P.2d at 1372 (citations omitted). "The primary consideration" in deciding whether a contempt proceeding is criminal "is the purpose and character of the sanctions imposed against the contemnor." *Id.* at 1372 n. 2 (citations omitted); *see also, e.g., Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 631, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988); *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). A key aspect to determining if a contempt proceeding is civil is whether the debtor may "mitigate or avoid punishment by taking action consistent with" the court's order. *In re Maloney*, 204 B.R. 671, 674 (Bankr.E.D.N.Y.1996); *see also In re Marriage of Nussbeck*, 974 P.2d at 498. If the order simply "incarcerates a party for a definite period of time or imposes another penalty, without any provision for purge of the contempt, [and] does not serve to redress a private right," it is a criminal contempt order. *Maloney*, 204 B.R. at 674.

When considered as a whole, the contempt proceedings in this case were civil

---

**8.** Weis argues that Bergeron did at one point have non-estate funds—namely, an amount she had loaned to her new husband.

**9.** Unlike the court in *Sternberg*, 595 F.3d at 945, however, we see no indication that Weis willfully acted in violation of the stay. He filed his motions for contempt before Bergeron filed for bankruptcy and provided a good faith argument that the stay did not apply to the proceedings below.

in nature. First, the proceedings provided a remedial sanction, as they allowed Bergeron an opportunity to purge the contempt. As it imposed the jail sentence, the court stated that it "would entertain a request for reconsideration [of the jail sentence] in the event that [Bergeron] is able to come up with some of those funds . . . ." Because Bergeron may be able to purge the contempt, the sanction is in the nature of a remedial contempt sanction. *See* C.R.C.P. 107(e) (noting that, while punitive sanctions can be reconsidered, they cannot be suspended "based upon the performance or non-performance of any future acts"); *In re Marriage of Zebedee,* 778 P.2d 694, 698 (Colo.App.1988). A civil, or remedial, contempt proceeding—such as one involving a sanction that can be purged—is subject to the stay.

▪ Second, numerous additional facts in the record indicate that the proceedings were designed to force payment to a third party, rather than to uphold the dignity of the court. The trial court set a supersedeas bond for the amount "that's due and owing [Weis]." [10] Additionally, the court imposed attorney's fees for the contempt proceedings because the proceedings involved "enforcement remedies." Finally, it is clear that the court primarily considered the impact on third parties, rather than the impact on the court. For example, the court noted that Bergeron "made personal choices; totally disregarded the impact on [Weis] and her son . . . ." Where the "protection or enforcement of the rights of an individual litigant" are at issue, the contempt proceeding is civil. *E.g., Wright v. People ex rel. Sprague,* 31 Colo. 461, 466, 73 P. 869, 870 (1903). Overall, the record indicates that the proceedings were designed to enforce payment obligations to a third person, rather than to vindicate the dignity of the court. Given these facts, the primary nature of the proceedings was civil, rather than criminal.

▪ The trial court found that the punitive sanctions fit within the "criminal proceeding" exception to the automatic stay be-

cause "a punitive sanction was requested" by Weis and because these punitive sanctions come with protections similar to those available in criminal cases, making this a "quasi criminal" case. First, we note that a creditor cannot turn enforcement actions into a criminal matter merely by requesting punitive sanctions. If that were the case, any creditor could avoid the automatic stay's limitations merely by adding a request for punitive sanctions to a request for remedial sanctions.

▪ As to the trial court's second point, we observe that "criminal contempt is not a common law or statutory crime" in Colorado. *People v. Razatos,* 699 P.2d 970, 974 (Colo. 1985) (citation omitted). Additionally, not all protections available for criminal defendants are available to those charged with criminal contempt. *Barron,* 677 P.2d at 1372. The Bankruptcy Code contains no exception for "quasi criminal" proceedings. Given the facts suggesting the proceedings were civil in nature, we find that the "quasi criminal" protections did not create a criminal proceeding.

▪ Finally, the findings made by the trial court in this case would not be sufficient to sustain a criminal contempt sanction. In *In re Marriage of Nussbeck,* 974 P.2d at 498, we made clear that in order to support a criminal contempt sanction for failure to pay, the court must find that the contemnor has the ability to pay. In this case, while imposing the sentence for contempt, the trial court specifically found that Bergeron did not have the present ability to pay the two credit card debts. We thus conclude that the contempt proceedings were in the nature of civil contempt and that therefore the exception to the automatic stay for criminal proceedings is not applicable.

### III.

In sum, because we conclude that the contempt proceedings in this case do not fall within either exception to the automatic stay found applicable by trial court, we find that

---

10. Colorado typically requires the posting of a supersedeas bond prior to staying a judgment. *See Muck v. Arapahoe County Dist. Court,* 814 P.2d 869, 872 (Colo.1991). However, in this case, the judgment for which stay was requested was the "punitive" sanction of sixty days imprisonment, while the bond to stay that judgment was set for the exact remedial amount owed.

the proceedings are barred by the automatic stay. At this point, "[t]he record fails to reflect that relief from the automatic bankruptcy stay has been granted .... Thus, this matter is left for the federal courts to resolve in the pending bankruptcy litigation." *West Gate Bank v. Am. Nat'l Bank,* 250 Neb. 506, 550 N.W.2d 318, 320 (1996). Accordingly, we vacate the order of the trial court and make the rule absolute.