# CIRCUIT COURT OF THE CITY OF ROANOKE

Christy Boyd Hicks

v.

James Adam Azim

January 15, 2014

Case No. CL06-357R

By Judge David B. Carson

The parties are before the court on plaintiff Christy Boyd Hicks' motion that the defendant, James Adam Azim, be held in civil contempt for failure to make court ordered payments to Hicks. The parties, both *pro se*, last came before the Court on December 10, 2013. During that hearing, Azim informed the Court that he filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code on August 13, 2013, and asserted that the pending resolution of his bankruptcy case would affect the outcome of this matter.

Believing that the resolution of his bankruptcy case will result in the discharge of his obligations to Hicks, Azim asks the Court to deny Hicks' motion for contempt. In opposition, Hicks claims the arrearages in this case are not dischargeable in bankruptcy.

The Court ordered the parties to submit written briefs on the issue. Both parties retained special counsel for this purpose, and, after considering their respective arguments and the applicable legal authority, the Court is now prepared to rule.

*Factual and Procedural History*

Because the nature of the arrearages in this matter is crucial to its outcome, a detailed history of this case is necessary.

Hicks and Azim married on September 17, 1997, in Roanoke, Virginia. In April 2006, the Circuit Court for the City of Roanoke granted them a decree of divorce *a vincula matrimonii*. Va. Code § 20-92(A)(9)(a). Prior to

the final divorce decree, the parties entered into a valid separation agreement dated July 25, 2005, filed it with the Court, and the Court later incorporated that agreement into the final decree of divorce. The agreement originally provided for spousal support payments to Hicks in the amount of $1,100.00 per month, but the Court found that Hicks voluntarily agreed to a reduction in spousal support to $700.00 per month and so noted that amendment in the final divorce decree.

The final separation agreement set out several terms. First, as already noted, Azim agreed to pay Hicks $700.00 per month "as and for spousal support" for thirty-six months beginning September 1, 2005. Second, the Court found an arrearage in spousal support as of April 2006 in the amount of $2,800 and docketed that sum as a judgment against Azim to bear interest at 6% *per annum*. Third, Azim agreed to be responsible for and timely pay the outstanding loan on a 2005 Chrysler Sebring the parties purchased during the marriage, and Hicks would take sole possession and legal title of that vehicle immediately. Fourth, Azim agreed to pay all past due taxes, penalties, and interest on past joint income tax returns filed by the parties. Fifth, Azim agreed to pay to Hicks "reimbursement for penalties and interest incurred on her student loan during the course of the marriage." Sixth, Azim agreed to pay to Hicks "a lump sum settlement" of $15,000.00 by October 1, 2008. The final divorce decree labels this obligation as a "lump sum property settlement." If that lump sum were not paid by the deadline, it would be docketed as a judgment against Azim and bear interest at 6% *per annum*. Finally, Azim agreed to pay Hicks' attorney's fees in the amount of $250.00 within nine months of the entry of the divorce decree.

Azim neglected to uphold the terms of the parties' separation agreement. Hicks filed a motion for contempt in May 2006, alleging that Azim failed to make spousal support payments or payments on the Chrysler Sebring loan. The Court, by its Order of June 21, 2006, found Azim in contempt of court and found a total arrearage in spousal support as of June 30, 2006, of $4,200.00. The Court ordered Azim to begin making weekly payments of $404.46, to bring current the outstanding loan on Hicks' Chrysler Sebring, to continue making payments on the loan, to fulfill any past due tax obligations from the parties' joint income tax returns, and to pay $350.00 in attorney's fees to Hicks' attorney. A subsequent July 2006 Order reflects a payment of $855.33 from Azim's former employer that should have been withheld as spousal support from Azim's pay checks.

Hicks filed another motion for contempt in August 2006, alleging that Azim again neglected to make any spousal support payments, payments on the Chrysler Sebring loan, or any payments related to Hicks' student loan interest and penalties. By its September 2006 Order, the Court found Azim in arrears in spousal support in the amount of $3,316.87 as of September 13, 2006. The Court also found Azim in arrears to Hicks for payments on the Chrysler Sebring loan in the amount of $1,669.79 and in

arrears to Hicks for reimbursement for penalties and interest on her student loans in the amount of $2,000.00. Finally, the Court ordered Azim to pay additional attorney's fees to Hicks' attorney in the amount of $909.60, bringing the total amount of attorney's fees owed to $1,259.60.

The parties appeared before the Court on another motion for contempt filed by Hicks in November 2006. Again, Hicks alleged in her motion that Azim had not made payments for spousal support or on the Chrysler Sebring loan as previously ordered by the Court. By its November 2006 Order, the Court found Azim's obligation to pay spousal support to Hicks terminated as of October 2006 based on Hicks' remarriage. The Court found an arrearage of spousal support of $2,901.87, excluding interest, and an arrearage of $1,954.13 for past due payments on the Chrysler Sebring loan. The Court adjusted Azim's payment obligations to account for these arrearages and the remaining loan obligation on the Sebring. The Court also found that Azim had not paid the $15,000 lump sum property settlement and ordered Azim to begin making monthly payments towards that obligation in June 2008. Finally, the Court ordered Azim to begin making monthly payments towards the $2,000.00 in student loan interest and penalties to Hicks in January 2008 and to either make arrangements to pay back taxes owed to the Virginia Department of Taxation or reimburse Hicks for any amount she paid to satisfy that debt.

In September 2009, the parties again came before the court on Hicks' motion for contempt. At that hearing, the Court found the arrearage to be $21,000.00 and ordered Azim to make monthly payments of at least $400.00.

In June 2010, the Court held another hearing where Hicks appeared, but Azim did not appear because of a medical appointment. The Court heard evidence from Hicks and made findings and directions that were not embodied in a written order until December 2010. Based on Hicks' evidence, the Court found the total arrearage in June 2010 to be $32,562.03. This amount apparently is composed of the following amounts: (1) $15,135.75 for the Chrysler Sebring Loan; (2) $2,007.89 for spousal support; (3) $6,666.72 for the lump sum property settlement; (4) $2,000.00 for student loan interest and penalties; (5) $3,543.78 for payments made by Ms. Hicks to the Virginia Department of Taxation; (6) $2,358.89 in attorney's fees; and (7) three additional payments of $238.00 Azim owed as payments towards the Chrysler Sebring loan. The sum of these listed amounts is $32,427.03. It is not clear from the record where the additional $135.00 in arrears should be attributed. The Court issued a capias for Azim, but due to a ministerial error, that capias was never issued.

Hicks again appeared before the Court in December 2010 and testified to additional arrearages of $2,052.13 "in periodic payments not made" and $8,117.12 "owed under the post-nuptial agreement." Accordingly, the Court found total additional arrearages owed of $10,169.25. The Court ordered

the issuance of another capias for Azim, and he was subsequently taken into custody for civil contempt. In July 2011, the Court suspended Azim's custody conditioned on his providing a $25,000 unsecured bond.

Both parties appeared before the Court in September 2011, and the Court found additional arrearage owed of $2,500.00. The Court ordered Azim to make monthly payments to Hicks of $250.00 to satisfy the total arrearage. The Court also found that Azim was entitled to a $300 credit towards the June 2010 judgment for a payment made to Hicks in September 2011.

Azim finally tried to fulfill his court ordered obligations following the September 2011 hearing. In fact, by the Court's Order of June 2012, Azim apparently made every payment due from September 2011 to June 2012. In August 2013, however, the parties again appeared before the Court on yet another motion for contempt filed by Hicks. At that hearing, Azim informed the Court that he filed for Chapter 7 bankruptcy that morning and listed Hicks as a creditor. The Court found an additional arrearage of $632.00, took the motion for contempt under advisement, and set another hearing in the case for December 2013.

Hicks argues that all of the obligations making up the amount in arrearage are domestic support obligations under 11 U.S.C. § 523(a)(5) and are thus exempt from the automatic stay protecting Azim once he filed for bankruptcy. In the event that the obligations do not all qualify as section 523(a)(5) exceptions, Hicks asserts that they are still exempt from discharge under section 523(a)(15).

Azim argues that all of the obligations, except for the spousal support obligation, are property settlements, and the automatic stay prevents Hicks from collecting on those obligations and prevents the Court from holding him in contempt for failure to make any payments towards those obligations.

On January 3, 2014, the United States Bankruptcy Court for the Western District of Virginia granted Azim a discharge under 11 U.S.C. § 727. *In re Azim*, Case No. 13-71317, Dkt. Nos. 52-53 (Bankr. W.D. Va. Jan. 3, 2014). A discharge in Chapter 7 lifts the automatic stay at the time the discharge is granted. 11 U.S.C. § 362(c)(2)(C); *In re Brooks*, Civ. A. No. 09-1408, 2009 U.S. Dist. LEXIS 97824, at *4 (D. Md. Oct. 16, 2009). Because the automatic stay is no longer in place as of January 3, the parties' respective arguments on that issue are now moot. Thus the only issue remaining is whether Azim's obligations to Hicks are exempt from his Chapter 7 discharge.

## Analysis

Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 727(b), allows a debtor to obtain a discharge "from all debts that arose before the order of relief." *Marvin v. Marvin*, 51 Va. App. 619, 624, 659 S.E.2d 579, 581 (2008) (internal quotations omitted). Some debts, however, are exempt from the discharge. 11 U.S.C. § 523. Section 523(a) lists nineteen exceptions

to the discharge, "and all but three are self-effectuating. . . . [They] are excepted from discharge simply because of the nature of the debts." *In re Everly*, 346 B.R. 791, 795 (B.A.P. 8th Cir. 2006); *see* 11 U.S.C. § 523(a)(5). State courts and bankruptcy courts share concurrent jurisdiction to determine nondischargeable debts under 11 U.S.C. § 523(a), but the question of whether a debt is nondischargeable is one of federal law. *Marvin*, 51 Va. App. at 624-25, 659 S.E.2d at 582.

There are two exceptions listed in § 523(a) potentially applicable in this case. The first exception is any debt qualifying as a "domestic support obligation." 11 U.S.C. § 523(a)(5). For a spousal support debt to be exempt from the Chapter 7 discharge as a domestic support obligation, it must be: (1) owed to or recoverable by a spouse, former spouse, or a governmental unit; (2) be in the nature of alimony, maintenance, or support of such spouse or former spouse even if not expressly so designated; (3) be established in a separation agreement, divorce decree, property settlement agreement, or court order; and (4) not assigned to a nongovernmental entity, unless the obligation is assigned voluntarily by the spouse or former spouse. *See* 11 U.S.C. § 101(14A).

The second relevant exception in § 523(a) is a debt "to a spouse [or] former spouse of the debtor . . . incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record. . . ." 11 U.S.C. § 523(a)(15). To fall under the auspices of § 523(a)(15), the debt must not be of the kind described in § 523(a)(5). *Id.; In re Mayes*, 455 B.R. 506, 508 (Bankr. W.D. Va. 2011). "What matters in a [section] 523(a)(15) case is (1) the nature of the debt; and (2) whether the debt was incurred in the course of a divorce or separation." *In re Wodark*, 425 B.R. 834, 837-38 (B.A.P. 10th Cir. 2010). Even if the underlying obligation was owed to a third party, that does not prevent a debtor from incurring a separate, nondischargeable obligation to a spouse or former spouse in connection with a divorce or separation. *Id.* at 838.

The Bankruptcy Abuse Prevention and Consumer Prevention Act of 2005 ("BAPCPA"), Pub. L. 109-08, 119 Stat. 23, amended 11 U.S.C. § 523(a)(15) such that a debtor's ability to pay is no longer a consideration for the court; nor do courts engage in "a balancing test of whether a debtor would gain more than his or her domestic relations creditors if the debtor were granted a discharge." *Prensky v. Clair Greiffer, L.L.P.*, No. 09-6200, 2010 U.S. Dist. LEXIS 66181, at *9-10 (D. N.J. June 30, 2010).

Thus, the nature of each particular debt contributing to the $50,237.96 in arrearage in this case will determine whether it is a nondischargeable debt exempt from the Chapter 7 order of relief. The Court arrived at $50,237.96 by adding the following findings of arrearage in this case: $32,562.03 pursuant to the Court's June 16, 2010, order; an additional $10,169.25 pursuant to the Court's December 20, 2010, order; an additional $2,500.00

pursuant to the Court's September 21, 2011, order; and an additional $632.00 pursuant to the Court's August 14, 2013, order. Each debt contributing to the total arrearage in this case stemmed from the divorce decree specifically incorporating the parties' separation agreement. Furthermore the arrearages docketed as judgments against Azim in this case were all in connection with that divorce decree. Therefore, it is not necessary to address each debt individually to determine if it is dischargeable or not. In this case, each of the debts is either a domestic support obligation excepted from discharge under 11 U.S.C. § 523(a)(5), or, if not a domestic support obligation, then it is by default excepted from the discharge under 11 U.S.C. § 523(a)(15). *In re Pino,* 268 B.R. 483, 490-93, 505 (Bankr. W.D. Tex. 2001).

Thus, the Court finds that the $50,237.96 in arrearage in this case is exempt from the discharge granted to Azim under Chapter 7 of the Bankruptcy Code.

Hicks asks the Court to hold Azim in contempt for failure to make payments on his separation obligations. "A trial court may hold an obligor in contempt for failure to pay where such failure is based on unwillingness, not inability, to pay." *Seymour v. Seymour,* Rec. No. 0554-01-02, 2002 Va. App. LEXIS 129, at *6 (Va. App. Mar. 5, 2002) (unpublished) (citing *Barnhill v. Brooks,* 15 Va. App. 696, 704, 427 S.E.2d 209, 215 (1993)). The Court is not convinced that Azim's failure to make payments on his obligations to Hicks is the result of any unwillingness on Azim's part. He made almost every payment from September 2011 to August 2013, accruing an arrearage of only $632 during that time period. Moreover, in light of his recent bankruptcy, the Court finds sufficient justification that Azim was unable, not unwilling, to meet his obligations.

Hicks may at any time, and without necessity for further Order, ask the Division of Child Support Enforcement to take over the responsibility of having and disbursing payments in this case, and upon such request, DCSE shall proceed to do so and shall be vested with all powers of collection and enforcement.

### *Conclusion*

For the reasons stated above, all of the debts contributing to the arrearage in this case are nondischargeable either under 11 U.S.C. 523(a)(5) or (15), and they are not affected by Azim's Chapter 7 discharge. Furthermore, the Court finds that Azim's failure to pay was not willful, and Hicks' Motion for Contempt should be denied.

Because special counsel for both Hicks and Azim agree Azim may be a candidate for a Chapter 13 bankruptcy, the Court will keep Hicks' Motion for Contempt under advisement until February 21, 2014. If Azim does not file for Chapter 13 bankruptcy protection by that date, Mr. Laymon is directed to prepare an appropriate order in accordance with this letter opinion.