THE DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES *ex rel.* SANDRA M. HEARD, Petitioner-Appellee, v. KEVIN HEARD, Respondent-Appellant.

Third District    No. 3—08—1003

Opinion filed September 15, 2009.

Dick B. Williams, of Williams, Williams & Loeffel, P.C., of East Peoria, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Angela Williams, Diane M. Potts, and Rachel Murphy (argued), Assistant Attorneys General, of counsel), for appellee.

JUSTICE CARTER delivered the opinion of the court:

The respondent, Kevin Heard, appeals from an order of the Peoria County circuit court registering for enforcement a child support order entered against him in Germany. Kevin objected to the registration and enforcement of the order in Illinois because he maintained that Germany did not have personal jurisdiction over him due to inadequate contact with Germany and failure to serve him with notice of the proceedings. The circuit court found that Germany had jurisdiction over Kevin and that abode service on Kevin was proper. Kevin appeals, and we reverse.

## FACTS

On October 16, 2006, the Illinois Department of Healthcare and Family Services (the Department) filed documents seeking to register a foreign order pursuant to the Uniform Interstate Family Support Act (the Act) (750 ILCS 22/602 (West 2006)). The attached documents included a "Registration Statement" and an order from a family court in Trier, Germany. These documents indicate that a child support order was entered against Kevin in Germany on December 7, 2004.

After being notified that the German support order had been registered in the Peoria County circuit court, Kevin filed his objection to the validity of the support order. Kevin claimed that he had never received notice of the support order and that Germany did not have jurisdiction over him or his son, Nicholas, on December 7, 2004. On March 7, 2007, the court stayed enforcement of the support order by agreement of the parties because Kevin claimed that he had never received notice of the child support proceedings in Germany.

On October 30, 2007, the Department filed a new set of documents seeking registration of the German child support order. On November 13, 2007, the Department filed a "Notice of Registration of Foreign Order." Kevin again objected to the registration of the German order because he did not receive notice of the order and Germany lacked personal and subject matter jurisdiction over the matter. The Department filed its response to Kevin's objection on June 3, 2008, arguing that Germany had personal jurisdiction over Kevin and that Kevin was served with notice of the child support proceedings in Germany. Attached to the response were two documents indicating that documents from Germany were served upon David Harris at 7217 N. University, apartment E5, in Peoria on September 9, 2004. David Harris was described as Kevin's brother and co-resident of the apartment.

On June 24, 2008, Kevin filed a memorandum in support of his objection. In the attached affidavit Kevin attested to the following facts. Kevin met Sandra in Germany in 1995 when he was in the Army and stationed at a military base there. Kevin and Sandra were married in Denmark on August 8, 1997, and moved to the United States in May 1998. Their son Nicholas was born in New York on November 1, 2001. Kevin, Sandra, and Nicholas moved to Peoria, Illinois, in November 2001. In September 2003, Sandra took Nicholas to Germany to visit her mother. Sandra and Nicholas were supposed to return to Peoria in November 2003, but she told Kevin that she did not want to return to the United States because she was homesick.

Kevin also stated that he was not served with a petition for child support or any related document before a child support order was entered in Germany on December 7, 2004. Kevin resided alone at the Briargate Apartments in Peoria from September 2003 through December 2004. Kevin also denied that he had a brother named David Harris or that he knew anyone named David Harris. Also attached to the memorandum was an affidavit from the manager of Kevin's apartment complex. The manager stated that Kevin lived alone from September 2003 through December 2004.

On August 19, 2008, the court held a hearing on Kevin's objection to the registration of the foreign order. Kevin reiterated his argument that Germany did not have personal jurisdiction over him because he never purposely availed himself of the benefits and protections of German law. In addition, Kevin maintained that he was not properly served notice of the child support action because he did not have a brother named David Harris and abode service was not completed in strict compliance with section 2—203 of the Code of Civil Procedure. 735 ILCS 5/2—203 (West 2006). The Department argued that Germany had personal jurisdiction over Kevin under German law because Sandra was a German citizen and it was not unreasonable for Germany to assert jurisdiction over him. The Department also maintained that Kevin was properly served.

On November 10, 2008, the court filed its written order regarding Kevin's objection to the registration and enforcement of the German support order. The court found that the evidence established that Kevin was properly served via service at his abode. The court also concluded that Germany had jurisdiction over Kevin and ordered that the German child support order be registered and enforced. Kevin appealed.

## ANALYSIS

On appeal, Kevin contends that the trial court erred by ordering the German child support order to be registered and enforced in Il-

linois because Germany lacked personal jurisdiction over him. The existence of personal jurisdiction "depends upon the presence of reasonable notice to the defendant that an action has been brought [citation] and a sufficient connection between the defendant and the forum State to make it fair to require defense of the action in the forum." *Kulko v. Superior Court of California*, 436 U.S. 84, 91, 56 L. Ed. 2d 132, 141, 98 S. Ct. 1690, 1696 (1978). Kevin argues that he did not have sufficient contacts with Germany such that the German court's exercise of jurisdiction over him comported with due process. In addition, Kevin maintains that he was not properly served with notice of the German child support proceedings.

The Act provides a mechanism by which support orders of other states, including foreign countries, may be registered and enforced in Illinois. 750 ILCS 22/101 *et seq.* (West 2008). A nonregistering party may seek to contest the validity or enforcement of a registered order for different reasons, including the lack of personal jurisdiction over the contesting party by the issuing tribunal. 750 ILCS 22/606, 607 (West 2008). The party contesting the validity or enforcement of a registered order bears the burden of proving the asserted defense. 750 ILCS 22/607 (West 2008).

First, we consider whether Kevin's contacts with Germany were sufficient to require Kevin to defend the child support action in a German court. Kevin argues that section 201 of the Act governs whether Germany had jurisdiction over him in this matter. 750 ILCS 22/201 (West 2008). We disagree. Under the plain language of the statute, section 201 determines when an Illinois tribunal may exercise personal jurisdiction over a nonresident. 750 ILCS 22/201 (West 2008). In this case, we are concerned with the assertion of jurisdiction by Germany over an Illinois resident.

The long-standing constitutional standard for determining whether a forum may enter a binding judgment against a defendant is whether the defendant had minimum contacts with the forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Kulko*, 436 U.S. at 92, 56 L. Ed. 2d at 141, 98 S. Ct. at 1696-97. For minimum contacts to exist, it is essential " 'that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Boyer v. Boyer*, 73 Ill. 2d 331, 337, 383 N.E.2d 223, 225 (1978), quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1240 (1958). "The defendant's conduct with respect to the forum state must be such that he would reasonably anticipate being haled into that state's court." *Bombliss v. Cornelsen*, 355 Ill. App. 3d 1107, 1113,

824 N.E.2d 1175, 1179 (2005), citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980). This constitutional standard applies, as here, when the out-of-state forum is a foreign country and a party seeks to have a foreign judgment enforced in Illinois. See generally *Koster v. Automark Industries, Inc.*, 640 F.2d 77 (7th Cir. 1981).

The Department maintains that the instant case is similar to *Willmer v. Willmer*, 144 Cal. App. 4th 951, 958-59, 51 Cal. Rptr. 3d 10, 14-15 (2006), in which the California Court of Appeal held that a German court's assertion of jurisdiction over the defendant did not offend due process. In that case, the defendant was a German citizen who married another German citizen in Canada. *Willmer*, 144 Cal. App. 4th at 954, 51 Cal. Rptr. 3d at 12. The couple lived in Germany together as a married couple for almost two years and had a child during that time. *Willmer*, 144 Cal. App. 4th at 954-55, 51 Cal. Rptr. 3d at 12. When the relationship ended, the parties and the child were living in Germany. *Willmer*, 144 Cal. App. 4th at 954, 51 Cal. Rptr. 3d at 12. When the defendant left Germany several months later, his wife and child remained there. *Willmer*, 144 Cal. App. 4th at 954, 51 Cal. Rptr. 3d at 12. A default judgment ordering the defendant to pay child and spousal support was entered against him several months after he left Germany. *Willmer*, 144 Cal. App. 4th at 954, 51 Cal. Rptr. 3d at 12.

Here, Kevin is not, nor has he ever been, a German citizen. Kevin and Sandra were married in Denmark, not Germany, and only lived in Germany as a married couple for approximately nine months. Nicholas was not born or conceived in Germany. Furthermore, the marital home at the time that Sandra and Nicholas left for Germany was Illinois.

This case is more akin to *Kulko*, 436 U.S. 84, 56 L. Ed. 2d 132, 98 S. Ct. 1690, and *Boyer*, 73 Ill. 2d 331, 383 N.E.2d 223. In *Kulko*, the United States Supreme Court determined that the appellant, a resident of New York, did not purposely avail himself of the benefits and protections of California's laws in a suit to establish a foreign divorce decree as a California judgment and modify the custody and child support provisions of that judgment. *Kulko*, 436 U.S. at 91-96, 56 L. Ed. 2d at 141-44, 98 S. Ct. at 1696-99. The appellant, his former wife and their children were residents of New York for the entirety of the marriage. *Kulko*, 436 U.S. at 86-87, 56 L. Ed. 2d at 138, 98 S. Ct. at 1694. The wife moved to California after their separation and the appellant subsequently acquiesced in their daughter's desire to live with her mother in California. *Kulko*, 436 U.S. at 87-88, 56 L. Ed. 2d at 138, 98 S. Ct. at 1694.

Further, the Court found California's assertion of jurisdiction over appellant to be unreasonable and unfair, in part because the appellant remained in the state of the marital domicile, whereas his former wife moved across the country. *Kulko*, 436 U.S. at 97-98, 56 L. Ed. 2d at 144-45, 98 S. Ct. at 1699-1700. In addition, the single act of acquiescing to his daughter's desire to live with her mother

> "is surely not one that a reasonable parent would expect to result in the substantial financial burden and personal strain of litigating a child-support suit in a forum 3,000 miles away, and we therefore see no basis on which it can be said that appellant could reasonably have anticipated being 'haled before a [California] court.' " *Kulko*, 436 U.S. at 97-98, 56 L. Ed. 2d at 145, 98 S. Ct. at 1699-1700, quoting *Shaffer v. Heitner*, 433 U.S. 186, 216, 53 L. Ed. 2d 683, 705, 97 S. Ct. 2569, 2586 (1977).

In *Boyer*, the Illinois Supreme Court relied upon *Kulko* and determined that the defendant did not have minimum contacts with Illinois. *Boyer*, 73 Ill. 2d at 340-41, 383 N.E.2d at 226-27. In addition, the court concluded that the quality and nature of the defendant's activities were not such that it would it be fair and reasonable to require him to defend an action in Illinois. *Boyer*, 73 Ill. 2d at 341, 383 N.E.2d at 227. As in *Kulko*, the defendant in *Boyer* remained in the state of the marital domicile and received no commercial or personal benefit from his children's presence in Illinois. *Boyer*, 73 Ill. 2d at 340-41, 383 N.E.2d at 226-27.

Here, Kevin's contacts with Germany do not indicate that he purposely availed himself of the benefits and protections of German law. Kevin's contacts with Germany as presented by the record are as follows: Kevin was stationed in Germany while in the United States Army and met a German citizen whom he married in Denmark in August 1997. Approximately nine months after their marriage, they moved to the United States in May 1998. In November 2001, Kevin and his German wife had a baby, Nicholas. In September 2003, Sandra and Nicholas traveled to Germany to visit her mother with Kevin's knowledge. After Sandra indicated that she and Nicholas would not be returning to the United States, it appears from the nature of the action before us that Kevin failed to support Nicholas while Nicholas was living in Germany.

As in *Kulko* and *Boyer*, Kevin remained in Illinois where the family had lived for approximately two years, while Sandra left the marital home for Germany. In addition, the acts of marrying a German citizen and living briefly in Germany as a married couple are not, by themselves, acts by which Kevin purposely availed himself of the benefits of German law. See *Duncan v. Duncan*, 94 Ill. App. 3d 868,

870, 419 N.E.2d 700, 701 (1981) (determining that defendant did not have sufficient contacts with Illinois for purposes of personal jurisdiction where parties were married in Illinois and briefly lived in Illinois after marriage but then moved to Virginia and had no contact thereafter with Illinois). Furthermore, the act of failing to support Nicholas while he lived in Germany did not grant Germany jurisdiction over Kevin. *Cf. In re Marriage of Highsmith*, 111 Ill. 2d 69, 76, 488 N.E.2d 1000, 1003-04 (1986) (concluding that where out-of-state defendant had custody of child under California judgment of dissolution and defendant "purported to transfer custody to her maternal grandparents [in Illinois] without making provision for [the child's] support, [defendant] was answerable in Illinois proceedings concerning [the child's] custody and support"). Thus, we conclude that Kevin's contacts with Germany were not sufficient to satisfy the requirements of due process.

Next, Kevin maintains that he was not properly served notice of the child support proceedings in Germany. Because we have concluded that Kevin's contacts with Germany do not meet constitutional due process requirements, we need not consider this issue.

## CONCLUSION

For the foregoing reasons, the circuit court erred by finding that Germany properly asserted personal jurisdiction over Kevin in the child support proceedings. Accordingly, the judgment of the Peoria County circuit court is reversed.

Reversed.

HOLDRIDGE and LYTTON, JJ., concur.