Colorado Court of Appeals Opinions || September 24, 2015


Colorado Court of Appeals -- September 24, 2015
2015 COA 134. No. 14CA0606. In re the Marriage of Lohman.



 Â 

 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 134

 
 



 Court of Appeals No. 14CA0606
 Grand County District Court No. 12DR24
 Honorable Michael A. OâHara, III, Judge


 In re the Marriage of Fiona Mary Lohman,

 Appellee,

 and

 Michael Joseph Lohman,

 Appellant.


 ORDERS AFFIRMED IN PART, REVERSED IN PART,
 AND CASE REMANDED WITH DIRECTIONS

 Division VII
 Opinion by JUDGE BERGER
 Lichtenstein and Navarro, JJ., concur

 Announced September 24, 2015


 Anthony J. Dicola, Hot Sulphur Springs, Colorado, for Appellee

 Stevens Littman Biddison Tharp & Weinberg LLC, Andrew C. Littman, Craig A. Weinberg, Boulder, Colorado, for Appellant

 
 Â 

 Â¶1Â Â Â Â Â Â Â  Michael Joseph Lohman (husband) appeals the district courtâs ruling that a support order entered in favor of Fiona Mary Lohman (wife) by an English court is enforceable in Colorado. Husbandâs primary argument on appeal is that even if the issuing court in England had personal jurisdiction over him under English law, the Due Process Clause prohibits enforcement of the order by a Colorado court.

 Â¶2Â Â Â Â Â Â Â  We must decide whether a Colorado court, when requested to register or enforce a foreign judgment, should determine only whether the foreign court[1] properly exercised personal jurisdiction under its laws, or whether the Colorado court also must determine whether the foreign courtâs exercise of personal jurisdiction is consistent with the Constitution and laws of the United States.

 Â¶3Â Â Â Â Â Â Â  The district court determined that the English court had personal jurisdiction over husband under Englandâs personal jurisdiction laws. But the district court did not determine whether the jurisdictional requirements of United States law were met beforeÂ ordering registration and enforcement of the foreign judgment in favor of wife.

 Â¶4Â Â Â Â Â Â Â  We hold that before a foreign judgment may be enforced by a Colorado court, it must comport with the personal jurisdiction requirements of United States law.[2] Accordingly, we reverse the courtâs orders that recognized the foreign judgment and denied husbandâs C.R.C.P. 59 motion challenging the recognition order. We remand for a determination whether the exercise of jurisdiction over husband by the English court was consistent with the Constitution and laws of the United States. We affirm the district courtâs orders on all other issues.

 I. Facts and Procedural History

 Â¶5Â Â Â Â Â Â Â  Husband and wife (a native of England) married in Colorado in 1997. Their child was born the following year. Wife moved back toÂ England with the child in 2008 after the partiesâ separation. Husband remained in Colorado.

 Â¶6Â Â Â Â Â Â Â  Wife petitioned for divorce in England and served husband in Colorado. Despite multiple opportunities to do so, husband did not respond to wifeâs divorce petition, file any document, or otherwise enter an appearance in the English court.

 Â¶7Â Â Â Â Â Â Â  On October 8, 2010, the English court entered judgment against husband for Â£638,000, which, based on the exchange rate at that time, equated to approximately $1,010,911. The English court apportioned the judgment as follows: Â£120,000 (roughly $190,140) for lump sum maintenance, Â£80,000 (roughly $126,760) for the childâs post-secondary education expenses, Â£423,000 (roughly $670,243) for the purchase of a home, and Â£15,000 (roughly $23,767) for incurred and future attorney fees.

 Â¶8Â Â Â Â Â Â Â  Wife then filed a notice of registration of foreign support order in Grand County District Court, citing section 14-5-605, C.R.S. 2015, of the Uniform Interstate Family Support Act (UIFSA), codified in Colorado as sections 14-5-101 to 14-5-903, C.R.S. 2015.[3] Husband contested registration under sections 606 and 607 of UIFSA. Â§Â§ 14-5-606, 14-5-607, C.R.S. 2015. Husband also cited section 14-11-101, C.R.S. 2015, as a basis for vacating the notice of registration. After an evidentiary hearing, the district court sustained the notice of registration and ordered enforcement of the English judgment.[4]

 Â¶9Â Â Â Â Â Â Â  Husband moved to alter, amend, or reconsider the order under C.R.C.P. 59, or in the alternative, to âamend, set aside and make new Orders under Â§ 14-11-101, C.R.S.â The court denied the motion.

 Â¶10Â Â Â Â Â Â Â  The court held that husband âfailed in his burden to challenge the registration of the English courtâs order pursuant to C.R.S. 14Â­5-606 and . . . failed to convince [the] court that it should grant his request to modify, alter, or amend the judgment of the English court.â The court stated that all of the arguments husband made in the Rule 59 motion had been raised, argued, addressed, and rejected in the registration proceeding. The court also found no new basis requiring the English judgment to be modified. The court concluded, âThe bottom line is this: [husband] made a decision not to participate in the proceedings in England knowing that the court in England would enter enforceable orders concerning certain financial matters. When he made that decision he elected to be governed by that court.â The court thus found that husband did not show that the English proceeding was unfair, inequitable, or illegal.

 II. Personal Jurisdiction

 Â¶11Â Â Â Â Â Â Â  Husband first contends that for purposes of enforcement by a Colorado court, the English court lacked personal jurisdiction over him and that, therefore, the English judgment cannot constitutionally be recognized. Specifically, he argues that because he had insufficient minimum contacts with England, the maintenance of the action offends traditional due process notions of fair play and substantial justice.

 A. Waiver of the Personal Jurisdiction Defense

 Â¶12Â Â Â Â Â Â Â  Wife argues that husband waived the defense of lack of personal jurisdiction because he did not make a minimum contacts argument in the district court. Although it is a close question, we conclude that husband did not waive this defense.

 Â¶13Â Â Â Â Â Â Â  The defense of personal jurisdiction, unlike the defense of subject matter jurisdiction, must be timely asserted by a defendant. C.R.C.P. 12(b); Brown v. Silvern, 141 P.3d 871, 873 (Colo. App. 2005). If not, it is waived. Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702-03 (1982); Currier v. Sutherland, 218 P.3d 709, 714-15 (Colo. 2009); see also C.R.C.P. 12(h). Thus, if a defendant defaults in the forum court andÂ collaterally challenges the judgment in the enforcement court, the defendant nevertheless waives the defense of personal jurisdiction if the defendant does not timely assert it in the recognition or enforcement proceedings. See Ins. Corp. of Ir., 456 U.S. at 703; Currier, 218 P.3d 714; see also Swafford v. Elkins, 761 S.E.2d 359, 360-61 (Ga. Ct. App. 2014).

 Â¶14Â Â Â Â Â Â Â  After wife filed her verified petition to register a foreign support order under UIFSA in the Colorado district court, husband timely filed his âResponse to Notice of Registration of Foreign Support Order and Verified Petition to Register Foreign Support Order.â Paragraph 4 of the response reads: âRespondent objects to registration of order for enforcement because the issuing tribunal lacked personal jurisdiction over the Respondent pursuant to C.R.S. section 14-5-607(a)(1).â As discussed below, this provision of UIFSA expressly provides that lack of personal jurisdiction over the party contesting registration is a valid defense to registration. Â§ 14Â­5-607(a)(1).

 Â¶15Â Â Â Â Â Â Â  However, in addition to pleading the defense of lack of personal jurisdiction, a party asserting the defense must timely request the court to adjudicate the defense to preserve the issue forÂ appellate review. See Minto v. Lambert, 870 P.2d 572, 575 (Colo. App. 1993).

 Â¶16Â Â Â Â Â Â Â  At the hearing on registration of the English support order, husbandâs then-counsel stated: âBut the jurisdiction of the English court is nevertheless flawed by the lack of minimal [sic] that [husband] had, that allowed the English court to make anything that effectively would be real estate in the [sic] Colorado.â

 Â¶17Â Â Â Â Â Â Â  While that statement was hardly an articulate statement that there were insufficient contacts between husband and England to render permissible (under United States law) the English courtâs exercise of personal jurisdiction over him, it did at least minimally apprise the district court of the possibility that the order could not be enforced in the United States because of insufficient contacts. See Borquez v. Robert C. Ozer, P.C., 923 P.2d 166, 171 (Colo. App. 1995) (âTo preserve an issue for appeal, a party must make a timely objection which is specific enough to provide the trial court with a meaningful opportunity to correct the error.â), revâd in part on other grounds, 940 P.2d 371 (Colo. 1997).

 Â¶18Â Â Â Â Â Â Â  However, we need not decide whether this reference alone was sufficient to preserve the personal jurisdiction defense becauseÂ other, later occurring events also provide support for our conclusion that husband did not waive the defense.

 Â¶19Â Â Â Â Â Â Â  After the district court entered its order registering the English judgment, husband changed counsel. As discussed above, husbandâs new counsel filed a motion to alter or amend the judgment under C.R.C.P. 59. The Rule 59 motion explicitly challenged the recognition of the English judgment on the ground that husband allegedly did not have sufficient minimum contacts with England to render constitutional the English courtâs exercise of jurisdiction over him.

 Â¶20Â Â Â Â Â Â Â  In her response to the Rule 59 motion, wife stated: âThe personal jurisdiction and due process argument[s] submitted by [husband] have been determined by the court.â In denying the motion, the district court made a similar statement: âThe court finds that Husbandâs arguments contained in the present motion have been raised, argued and addressed prior to the order confirming registration. The only ânewâ issue now raised by Husband for the first time is an allegation that service was defective pursuant to the Hague Convention.â

 Â¶21Â Â Â Â Â Â Â  But none of the courtâs prior orders addressed whether husband had sufficient minimum contacts with England to render constitutional, for purposes of enforcement of the order by a Colorado court, the English courtâs exercise of personal jurisdiction over him. Instead, the court had focused on the important (but not determinative) fact that husband was served in Colorado with the English court process and had multiple opportunities to appear in the English court. From these findings, which are not disputed on appeal, the court concluded that, because the English court acquired personal jurisdiction over him under English law, UIFSAâs personal jurisdiction requirement was satisfied. For the reasons discussed below, that conclusion was erroneous.[5]

 Â¶22Â Â Â Â Â Â Â  Ordinarily, raising a new issue for the first time in a C.R.C.P. 59 motion is insufficient to preserve that issue for appeal. See Fid.Â Natâl Title Co. v. First Am. Title Ins. Co., 2013 COA 80, Â¶51. However, the situation is different when, as here, a defendant already had alerted the court to a minimum contacts issue, the court addressed the arguments contained in the Rule 59 motion on the merits, and the court stated that it had considered those arguments in its prior order and had ruled on them. Under these circumstances, an appellate court appropriately reviews the partyâs contention on the merits.

 Â¶23Â Â Â Â Â Â Â  Accordingly, we now address the merits of husbandâs personal jurisdiction argument.

 B. Personal Jurisdiction Requirements for Foreign Support Orders

 1. Minimum Contacts and Family Support Orders

 Â¶24Â Â Â Â Â Â Â  The Due Process Clause of the United States Constitution prohibits a United States court from issuing, recognizing, or enforcing a judgment unless the court that issued the judgment had personal jurisdiction over the defendant. Pennoyer v. Neff, 95 U.S. 714, 732-33 (1878), overruled in part by Shaffer v. Heitner, 433 U.S. 186 (1977); Intâl Shoe Co. v. Washington, 326 U.S. 310, 316Â (1945).[6] âThe existence of personal jurisdiction, in turn, depends upon the presence of reasonable notice to the defendant that an action has been brought . . . and a sufficient connection between the defendant and the forum State to make it fair to require defense of the action in the forum.â Kulko v. Superior Court, 436 U.S. 84, 91 (1978) (citing Milliken v. Meyer, 311 U.S. 457, 463-64 (1940)).

 Â¶25Â Â Â Â Â Â Â  A nonresident defendant may challenge personal jurisdiction in either the forum court, by entering an appearance and litigating the jurisdictional question there (if the time limit for entering an appearance has not expired), or by defaulting in the forum court and collaterally challenging the judgment in the enforcement court. Baldwin v. Iowa State Traveling Menâs Assân, 283 U.S. 522, 525 (1931); Marworth, Inc. v. McGuire, 810 P.2d 653, 656 (Colo. 1991). If the latter approach is taken, the challenge is limited only to jurisdiction; the merits of the judgment are not open to collateral attack in the enforcement court. Milliken, 311 U.S. at 462; Hansen v. Pingenot, 739 P.2d 911, 913 (Colo. App. 1987).Â 

 Â¶26Â Â Â Â Â Â Â  When the foreign judgment is challenged in the enforcement court, that court must determine both whether the forum court had personal jurisdiction over the defendant under its laws and whether enforcement of the resulting judgment meets the requirements of the Due Process Clause. See Milliken, 311 U.S. at 463-64; Hansen, 739 P.2d at 913; see also Restatement (Second) of Judgments Â§ 81 (1982).

 Â¶27Â Â Â Â Â Â Â  Personal jurisdiction over a nonresident of the forum state must be predicated on the existence of âcertain minimum contacts with [the forum State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.â Kulko, 436 U.S. at 92; see also Intâl Shoe, 326 U.S. at 316.

 Â¶28Â Â Â Â Â Â Â  A judgment entered without personal jurisdiction is void in the forum state and is not entitled to full faith and credit by any United States court. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980).

 Â¶29Â Â Â Â Â Â Â  These constitutional principles do not dissipate when the orders sought to be enforced are family support orders, includingÂ orders for spousal maintenance and child support.[7] In Kulko, 436 U.S. at 91-92, the seminal case addressing the enforcement of a support order against a nonresident defendant, the United States Supreme Court held that due process prohibits the assertion of personal jurisdiction over the nonresident defendant unless the exercise of jurisdiction satisfies the minimum contacts test set forth in International Shoe.

 Â¶30Â Â Â Â Â Â Â  Nor do these constitutional protections dissipate when the order sought to be enforced by a United States court is an order entered by a foreign court. A contrary holding would grant greater recognition and enforcement rights to a judgment entered by aÂ foreign court than to judgments entered by courts of sister states of the United States. The incongruence of such a holding and the mischief created by it are clear. Under such a view, if a foreign countryâs laws authorized universal, worldwide judicial jurisdiction for its tribunals, as long as the assertion of jurisdiction by the foreign court was consistent with such a law, a Colorado court would be required to recognize and enforce such a judgment even when a comparable judgment from a sister state could not be constitutionally enforced. Neither UIFSA, nor section 14-11-101, nor the Due Process Clause permits such a result.

 2. Personal Jurisdiction and UIFSA

 Â¶31Â Â Â Â Â Â Â  It is uncontested that an order under UIFSA may not be enforced if the issuing tribunal lacked personal jurisdiction over the defendant. UIFSA section 607 provides that â[a] party contesting the validity or enforcement of a registered support order or seeking to vacate the registration has the burden of proving . . . [the] defense[] [that] [t]he issuing tribunal lacked personal jurisdiction over the contesting party.â Â§ 14-5-607(a)(1).

 Â¶32Â Â Â Â Â Â Â  The district court held that the English court had personal jurisdiction over husband under English laws, a conclusion that theÂ parties have not disputed in the district court or on appeal. The court then appears to have concluded that so long as a foreign court has personal jurisdiction over a defendant under the foreign countryâs laws, a foreign judgment may be enforced under UIFSA, irrespective of whether the foreign courtâs assertion of jurisdiction comports with the Constitution and laws of the United States. Because this conclusion is inconsistent with UIFSA and violates the Constitution, we reject it.

 Â¶33Â Â Â Â Â Â Â  When properly construed, UIFSA requires the district court to determine not only whether the English court had personal jurisdiction over husband under the laws of England, but also whether enforcement of the English courtâs order by a United States court was permissible under the Due Process Clause of the United States Constitution.

 Â¶34Â Â Â Â Â Â Â  We recognize that the version of UIFSA in effect at the time of the courtâs registration order did not explicitly require the court to determine whether the assertion of jurisdiction was permissible under United States law. Thus, the district courtâs conclusion is understandable.

 Â¶35Â Â Â Â Â Â Â  However, the plain language of the statute also does not state that an enforcing court need only determine whether the personal jurisdiction requirements of the foreign country are met. A reviewing court must âpresum[e] that a statutory provision is constitutionalâ and â[i]f alternative constructions of a statute â one constitutional, the other unconstitutional â may apply to the case under review, [the court must] choose the one that renders the statute constitutional or avoids the constitutional issue.â Depât of Labor & Empât v. Esser, 30 P.3d 189, 194 (Colo. 2001). Because the Constitution forbids a United States court from recognizing or enforcing a foreign courtâs judgment unless the foreign courtâs exercise of jurisdiction was permissible under the laws of the United States, UIFSA must be interpreted to so require.

 a. Amendments to UIFSA

 Â¶36Â Â Â Â Â Â Â  Apart from constitutional requirements, later amendments to UIFSA provide persuasive evidence that UIFSA properly is construed to require a United States court to evaluate the foreign courtâs exercise of personal jurisdiction not only under the foreign courtâs law but also under United States law.

 Â¶37Â Â Â Â Â Â Â  A legislative amendment either clarifies or changes existing law. We presume that an amendment changes the law. City of Colorado Springs v. Powell, 156 P.3d 461, 465 (Colo. 2007); Acad. of Charter Schs. v. Adams Cnty. Sch. Dist. No. 12, 32 P.3d 456, 464 (Colo. 2001). However, this presumption can be rebutted by a showing that the legislature meant only to clarify an ambiguity in the statute by amending it. Acad. of Charter Schs., 32 P.3d at 464.

 Â¶38Â Â Â Â Â Â Â  To distinguish between a change and a clarification, we employ a three-pronged analysis, looking at the legislative history surrounding the amendment, the plain language used by the General Assembly, and whether the provision was ambiguous before it was amended. Id. For the reasons stated below, we conclude that the amendments to UIFSA that Colorado enacted in 2015 (adopting amendments to the uniform act made in 2008) were clarifications, not changes to the prior law.

 Â¶39Â Â Â Â Â Â Â  Thus, although the 2015 amendments are not applicable to the district courtâs enforcement of the English judgment (and were not available to the district court at the time of its rulings), they cast substantial light upon the legislative intent of UIFSA, pre-amendment. See also Grossman v. Columbine Med. Grp., Inc., 12Â P.3d 269, 271 (Colo. App. 1999) (â[E]ven though a statute is enacted subsequent to the particular events in question, it may be instructive in determining public policy on a particular issue.â).

 Â¶40Â Â Â Â Â Â Â  Section 14-5-708, C.R.S. 2015, effective July 1, 2015, provides that a United States court may refuse recognition and enforcement of a foreign courtâs support order if âthe issuing tribunal lacked personal jurisdiction consistent with section 14-5-201.â Section 14Â­5-201, C.R.S. 2015, which codifies section 201 of UIFSA, enumerates the jurisdictional events or circumstances that provide personal jurisdiction over the defendant in a support order proceeding under UIFSA. These events and circumstances parallel the minimum contacts test and, indeed, were designed specifically to conform to the United State Supreme Courtâs 1978 decision in Kulko and related cases. Unif. Interstate Family Support Act Â§ 201 cmt. (amended 2008); see also Robert G. Spector & Bradley C. Lechman-Su, International Family Law, 42 Intâl Law. 821, 822 (Summer 2008).

 Â¶41Â Â Â Â Â Â Â  The current version of UIFSA thus expressly contemplates that a defendant contesting enforcement of a foreign support order may argue that the issuing foreign tribunal lacked personal jurisdictionÂ over him under Kulko. See Unif. Interstate Family Support Act Â§ 201 cmt.

 b. UIFSA Pre-Amendment

 Â¶42Â Â Â Â Â Â Â  Significantly, the comment to the 2008 amendments to UIFSA (which are the amendments Colorado adopted in 2015) makes clear that the pre-2008 version (the version effective in Colorado until July 1, 2015) required the same bases of personal jurisdiction â minimum contacts under Kulko â that are made explicit in the post-2008 version. Unif. Interstate Family Support Act Â§ 708 cmt. Accordingly, the requirement that the enforcement court determine whether the foreign courtâs exercise of jurisdiction comported with the Due Process Clause was not a new requirement added in the 2008 amendments; instead, that requirement existed in the prior version as well.

 Â¶43Â Â Â Â Â Â Â  Several cases from other states interpreting UIFSA before the 2008 amendments, as well as multiple secondary authorities,8Â confirm this interpretation. Indeed, while there are no United States Supreme Court or reported Colorado cases addressing this precise issue, every court that has addressed the issue has held that the enforcement court must determine whether the foreign courtâs exercise of jurisdiction would have been proper when measured by the Due Process Clause.

 Â¶44Â Â Â Â Â Â Â  For instance, in Department of Healthcare and Family Services ex rel. Heard v. Heard, 916 N.E.2d 61, 62 (Ill. App. Ct. 2009), an Illinois trial court registered a child support order entered against the defendant by a German court. The defendant claimed that the German court lacked personal jurisdiction over him because he had insufficient contacts with Germany. Id. at 62-63. The Illinois appellate court agreed and held that the Kulko constitutional standard â minimum contacts â was fully applicable when an Illinois court was requested to enforce a foreign courtâs judgment under UIFSA: âThis constitutional standard applies, as here, when the out-of-state forum is a foreign country and a party seeks to have a foreign judgment enforced in Illinois.â Id. at 64.

 Â¶45Â Â Â Â Â Â Â  The same result was reached in Country of Luxembourg ex rel. Ribeiro v. Canderas, 768 A.2d 283, 288-89 (N.J. Super. Ct. App.Â 2000), which held that a forum courtâs exercise of in personam jurisdiction over a nonresident implicates the Due Process Clause. The court concluded that because the defendant did not have sufficient contacts with Luxembourg to meet the requirements of Kulko, a New Jersey court could not enforce, under UIFSA, the Luxembourg child support order against him.

 Â¶46Â Â Â Â Â Â Â  Similarly, in Willmer v. Willmer, 51 Cal. Rptr. 3d 10, 14-16 (Cal. Ct. App. 2006), a California appellate court held that the German court that issued the child and spousal support orders against the defendant properly found the court had jurisdiction over him under German law. The appellate court, however, proceeded to determine whether the German courtâs assertion of jurisdiction was consistent with Kulko. Id. at 15-16. The court concluded that Kulko permitted the German courtâs assertion of jurisdiction because the defendant had a multitude of contacts with Germany (he was a German citizen during the marriage, had been married to a German citizen, had a child who had been born in and was residing in Germany, and had lived with his wife and child in Germany). Id.

 Â¶47Â Â Â Â Â Â Â  The court thus held that, under UIFSA, the defendant did not establish that â[t]he issuing tribunal lacked personal jurisdiction over [him]â because he failed to meet his burden of proving that the German court had no jurisdiction over him under its own laws, or that âGermanyâs assertion of jurisdiction offend[ed] traditional notions of fair play and substantial justiceâ under the Due Process Clause. Id. at 14-15.

 3. The Restatement

 Â¶48Â Â Â Â Â Â Â  The Restatement also supports our conclusion that a foreign support order may not be enforced against a defendant unless the foreign courtâs exercise of personal jurisdiction over the defendant comports with due process, as determined under a minimum contacts analysis. Section 486 of the Restatement (Third) of the Foreign Relations Law of the United States addresses recognition and enforcement of foreign support orders. âWhere the requirements of fairness under Â§Â§ 481 and 482 have been met, this section requires that support orders of courts of foreign states be given the same respect in the United States as comparable orders of sister-States.â Restatement (Third) of the Foreign Relations Law of theÂ United States Â§ 486 reporterâs note 1 (1987) (emphasis added). Section 482 provides:

 (1) A court in the United States may not recognize a judgment of the court of a foreign state if:

 (a) the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with due process of law; or

 (b) the court that rendered the judgment did not have jurisdiction over the defendant in accordance with the law of the rendering state and with the rules set forth in Â§ 421.

 (Emphasis added.)

 Â¶49Â Â Â Â Â Â Â  Section 421, in turn, sets forth the circumstances when a foreign courtâs exercise of personal jurisdiction will be recognized by a United States court:

 (1) A state may exercise jurisdiction through its courts to adjudicate with respect to a person or thing if the relationship of the state to the person or thing is such as to make the exercise of jurisdiction reasonable.

 (2) In general, a stateâs exercise of jurisdiction to adjudicate with respect to a person or thing is reasonable if, at the time jurisdiction is asserted:

 (a) the person or thing is present in the territory of the state, other than transitorily;
 (b) the person . . . is domiciled in the state;
 (c) the person . . . is resident in the state;Â  the person . . . is a national of the state;
 . . .
 (g) the person . . . has consented to the exercise of jurisdiction;
 (h) the person . . . regularly carries on business in the state;
 (i) the person . . . had carried on activity in the state, but only in respect of such activity; [or]
 (j) the person . . . had carried on outside the state an activity having a substantial, direct, and foreseeable effect within the state, but only in respect of such activity[.]

 This court has cited with approval Restatement section 421 in the context of foreign divorce decrees. In re Marriage of Seewald, 22 P.3d 580, 584 (Colo. App. 2001).

 Â¶50Â Â Â Â Â Â Â  Notably, the bases of jurisdiction listed in section 421 are âsimilar to those developed under the due process clauseâ through decades of judicial decisions beginning with International Shoe. Restatement (Third) of the Foreign Relations Law of the United States Â§ 421 reporterâs notes 1, 2. As discussed above, Kulko, 436 U.S. at 91-92, requires a courtâs exercise of personal jurisdictionÂ against a defendant in a support proceeding to comport with the minimum contacts test set forth in International Shoe.

 Â¶51Â Â Â Â Â Â Â  Wife seeks to invoke the coercive powers of a Colorado court to enforce a foreign judgment. For the reasons discussed above, we hold that a Colorado court that is requested to enforce a foreign judgment against a Colorado resident, under UIFSA, section 14-11Â­101 (to the extent applicable), or otherwise, must consider not only whether the foreign court had personal jurisdiction under its laws, but also whether the exercise of that jurisdiction is consistent with the Constitution and laws of the United States.

 Â¶52Â Â Â Â Â Â Â  Accordingly, the district court was required to adjudicate whether husband had sufficient minimum contacts with England to render constitutional (under United States law) the assertion of jurisdiction over him by the English court. Because the district court did not do so, its orders cannot stand.

 Â¶53Â Â Â Â Â Â Â  On remand, the district court must determine whether husband had sufficient minimum contacts with England such that due process permits enforcement of the English orders by a Colorado court. Facts that may play a role in this determination include those found by the court at the conclusion of theÂ evidentiary hearing on the petition to register the English judgment. The court found that both wife and husband âspent time during the marriage in both the U.S. and [England]â (although it is not clear when, precisely, husband lived in England); their biological child lawfully resided in England; and the child attended school in England for at least some time. Conversely, it appears undisputed that husband never consented to the jurisdiction of the English court: he never appeared in the English court for any purpose and he was not present in England when he was served with the process of the English court.

 Â¶54Â Â Â Â Â Â Â  However, the significance of these jurisdictional facts (and such additional factual findings as the court may make upon remand) is for the district court to determine in the first instance. III. Award of Funds for Purchase of a Home

 Â¶55Â Â Â Â Â Â Â  Husband next contends that the district court erred in determining that the portion of the English judgment awarding wife Â£423,000 to purchase a home constituted support, rather than a transfer or award of property. Husband asserts that the distinction is important because the English court lacked subject matter jurisdiction to enter a property division. We conclude the recordÂ supports the district courtâs characterization of that part of the judgment as support.

 Â¶56Â Â Â Â Â Â Â  In deciding whether a particular obligation is in the nature of support or a property settlement, a court must consider whether the obligation was intended to be for support. See In re Marriage of Weis, 232 P.3d 789, 795 (Colo. 2010). The critical inquiry is whether the obligation imposed by the divorce court, at its substance, has the purpose and effect of providing support for the spouse. See In re Marriage of Wisdom, 833 P.2d 884, 889 (Colo. App. 1992). That question is factual, and we may not overturn the district courtâs findings resolving it unless they are clearly erroneous. In re Sampson, 997 F.2d 717, 723 (10th Cir. 1993).

 Â¶57Â Â Â Â Â Â Â  The district court specifically recognized that the English court âwent to great lengths to identify its order as a support award.â The English court methodically considered all of the criteria under the applicable law before determining the amount of support awarded for the needs of both wife and the partiesâ child. The English court did not set property aside to either party, and its consideration of the properties in Colorado and their values occurred during itsÂ discussion of the applicable support criteria, which included the partiesâ property and financial resources.

 Â¶58Â Â Â Â Â Â Â  In the registration hearing, wife presented expert testimony from an English solicitor who explained that awards of a significant lump sum to a party for housing needs, including the cost to purchase a residence, are not unusual in English divorce cases. He stated that courts categorized such lump sums as being for a partyâs needs, rather than as a property adjustment, and that English law permits such an award because it specifically âcateredâ to a spouseâs needs. He added that because the lump sum orders are viewed as maintenance orders, they are generally held to be enforceable internationally.

 Â¶59Â Â Â Â Â Â Â  He also opined that the English court went to âquite some trouble to make it clear that [it] was intending to make an order for maintenance rather than property adjustment,â and that its objective corresponded with its primary and overarching obligation under English law to ensure that the needs of the parties and the child were met within the limitations of the familyâs finances. He pointed out that the court awarded a reasonable amount, and that when it determined the amount, it only referred to wifeâs needs. He noted the English courtâs attempt to equate the amount of maintenance awarded with a proportion of the property asset pool in one instance, but also referred to the courtâs clarification that it considered the proportion only as a means of determining whether the amount being awarded was fair, and whether husband had the resources to pay the money.

 Â¶60Â Â Â Â Â Â Â  The district court was entitled to credit the expertâs opinions and, based on this record, we conclude that the courtâs finding that the English judgment represented a support order, rather than a property equalization payment, was not clearly erroneous and may not be overturned. See In re Marriage of Campbell, 140 P.3d 320, 323 (Colo. App. 2006) (pertinent inquiry in determining whether a debt is in the nature of support is whether payment has been ordered in recognition and fulfillment of the debtorâs duty to provide support).

 IV. Reciprocal Enforcement Provisions

 Â¶61Â Â Â Â Â Â Â  Husband further contends that the district court erred in determining that reciprocal provisions for like enforcement of Colorado judgments exist under English law. However, he also concedes that this issue is moot if the English courtâsÂ characterization of its judgment as a support order stands.

 Because we have upheld the support order characterization and the record establishes as a matter of law that reciprocal provisions exist for the enforcement of support orders, we do not further address this issue.

 V. Exemplified Copies

 Â¶62Â Â Â Â Â Â Â  Husband also contends that the district court lacked subject matter jurisdiction under section 14-11-101 because wife failed to show that she docketed exemplified copies of the English courtâs entire file. We conclude the record supports a determination that wife complied with the statute, and thus, assuming section 14-11Â­101 applied to the proceeding, the district court had subject matter jurisdiction under that provision.

 Â¶63Â Â Â Â Â Â Â  For subject matter jurisdiction to vest, exemplified copies of all of the foreign courtâs written pleadings, orders, judgments, and decrees must be docketed. See Â§ 14-11-101(1); In re Marriage of Orr, 36 P.3d 194, 196 (Colo. App. 2001). Whether the district court has subject matter jurisdiction is a question of law we review de novo. Egelhoff v. Taylor, 2013 COA 137, Â¶23. However, we review factual determinations affecting the existence of subject matterÂ jurisdiction under the clearly erroneous standard. See Colo. Special Dists. Prop. & Liab. Pool v. Lyons, 2012 COA 18, Â¶14.

 Â¶64Â Â Â Â Â Â Â  Although husband did not raise the exemplified copies issue in proceedings before the district court, he may raise it for the first time on appeal because it implicates the courtâs subject matter jurisdiction. See Tarco, Inc. v. Conifer Metro. Dist., 2013 COA 60, Â¶14.

 Â¶65Â Â Â Â Â Â Â  The district court noted at the beginning of the hearing that the parties stipulated to the admission of all of the filed documents and exhibits. The court also observed several times that it could enforce the English judgment only if it found the judgment legitimate. The courtâs acceptance of the English judgment indicates that it implicitly determined wife had complied with docketing requirements.

 Â¶66Â Â Â Â Â Â Â  Further, wife claims that she docketed exemplified copies of the courtâs entire file and that she is not responsible for the order in which they appear in the record. The record supports her claim insofar as it contains many documents from the English court file that appear to be exemplified. There is also no way of knowing whether the district court clerk or wife is responsible for theÂ manner in which the documents were input. In any event, husband identifies no documents enumerated in the statute that are missing and, although he notes that the English clerk did not certify two sections of the English court file, he does not argue that those sections contained necessary enumerated documents.

 Â¶67Â Â Â Â Â Â Â  Thus, like the district court, we conclude that wife docketed the necessary exemplified copies.

 VI. Conclusion

 Â¶68Â Â Â Â Â Â Â  The portions of the district courtâs orders addressing personal jurisdiction are reversed. The case is remanded to the district court to determine if the English judgment meets the jurisdictional requirements of section 14-5-201 and the Due Process Clause for enforcement in Colorado. If the court determines that it does, it must register and enforce the judgment. But if it finds that those jurisdictional requirements are lacking, it must dismiss the petition to register the English judgment. The remaining portions of the courtâs orders are affirmed.

 JUDGE LICHTENSTEIN and JUDGE NAVARRO concur.


 [1] To avoid confusion, we use the term âforeign courtâ to mean only a court of a foreign nation, not a court of a sister state of the United States. We define âUnited States courtâ to include federal and state courts in the United States.

 [2] We emphasize that the required inquiry is not whether the foreign court violates the Due Process Clause when it enters a judgment. Foreign nations are not bound by our Constitution. A foreign judgment consistent with the laws of the issuing nation is enforceable by the issuing court and â under principles of comity and various treaties â in other nations under those nationsâ laws regarding the enforcement of foreign judgments. Rather, the issue is whether a Colorado court constitutionally may enforce the judgment.

 [3] The Colorado statutes codifying UIFSA were revised significantly in 2015, as discussed below. However, although the pre-2015 version of the statutes was in effect at the time of the proceedings in this case, we cite the 2015 statutes because the relevant statutory language did not change (or because we are explicitly referring to the post-amendment version of a statute).

 [4] There is confusion in the record regarding the statutory basis for recognition of the English judgment in Colorado. Wifeâs notice of registration of foreign support order cites UIFSA, but does not cite section 14-11-101, C.R.S. 2015, which is not part of UIFSA. Husbandâs response cites both UIFSA and section 14-11-101. The courtâs order granting the petition to register the foreign support order states that â[t]his court is being asked to rule on Petitionerâs request to domesticate a foreign judgment pursuant to C.R.S. 14Â­11-101.â However, the court then addressed husbandâs objections to registration of the foreign judgment under section 607 of UIFSA. For present purposes, whether the district court recognized and enforced the judgment under section 14-11-101 or under UIFSA is irrelevant because due process requirements regarding the exercise of personal jurisdiction are equally applicable to judgments recognized under UIFSA and section 14-11-101. We express no opinion when, or under what circumstances, section 14-11-101 may be used to register a foreign support judgment. See Gonzales v. Dist. Court, 629 P.2d 1074 (Colo. 1981) (discussing applicability of section 14-11-101); In re Marriage of Hillstrom, 126 P.3d 315 (Colo. App. 2005) (same).

 [5] While the exercise of personal jurisdiction by the English court, in accordance with the laws of England, is an important consideration, it is not sufficient to resolve the question whether a United States court may enforce an English judgment consistent with UIFSA or the Constitution. Nor is it sufficient, by itself, that husband knew about the English proceedings and had multiple opportunities to participate in the English judicial proceedings. This court so held in In re Marriage of Seewald, 22 P.3d 580, 584-85 (Colo. App. 2001), by rejecting a husbandâs argument that his wifeâs actual knowledge of a Mexican divorce proceeding was sufficient to confer jurisdiction over the wife.

 [6] There are differences between recognition and enforcement of a foreign country judgment. See Restatement (Third) of the Foreign Relations Law of the United States Â§ 481 cmt. b (1987). However, those differences are not pertinent to this case, and we use the terms interchangeably.

 [7] United States jurisdictions draw a distinction between the jurisdictional requirements for the entry of a decree of divorce (or dissolution of marriage under Colorado law) and the entry of financial orders associated with the marriage. For the former, generally it is sufficient that the petitioner is domiciled in a United States jurisdiction; it makes no difference what, if any, contacts the respondent has with the forum. See In re Marriage of Kimura, 471 N.W.2d 869, 875-76 (Iowa 1991); Collins v. Collins, 844 N.E.2d 910, 913 (Ohio Ct. App. 2006); see also Restatement (Second) of Conflicts of Laws Â§ 71 (1971); 1 Homer H. Clark, Jr., The Law of Domestic Relations in the United States Â§ 13.2 (2d ed. 1987). However, financial orders, including those for child support, maintenance, and distribution of marital property, are considered to be in personam judgments, and for such judgments the respondent must have sufficient minimum contacts with the forum in order for the forum court constitutionally to exercise personal jurisdiction over the respondent. See, e.g., Kimura, 471 N.W.2d at 875-76.

 [8] See, e.g., Jeremy D. Morley, International Family Law Practice Â§ 6.5 (2014); Battle Rankin Robinson, Integrating an International Convention into State Law: The UIFSA Experience, 43 Fam. L.Q. 61, 72 (Spring 2009); Michael J. Peters, Note, International Child Support: The United States Striving Towards a Better Solution, 15 New Eng. J. Intâl & Comp. L. 91, 109-10 (2009).




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || September 24, 2015


Back