25CA0415 Peo in Interest of RSG 11-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0415
Boulder County District Court No. 24JV30102
Honorable Stephen Enderlin Howard, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of R.S.G. and V.G., Children,

and Concerning E.S.,

Appellant,

and V.I.G.,

Appellee.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE JOHNSON
Harris and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 20, 2025

---

Ben Pearlman, County Attorney, Cheryl Koh-Sicotte, Assistant County Attorney, Boulder, Colorado, for Appellee The People of the State of Colorado

Alison Bettenberg, Guardian Ad Litem

Just Law Group LLC, John F. Poor, Denver, Colorado, for Appellant

Harald Van Gaasbeek, Office of Respondent Parents' Counsel, Fort Collins, Colorado, for Appellee V.I.G.

¶ 1    E.S. appeals the judgment determining that he was not the legal father of V.G. and R.S.G. (the children) under the Uniform Parentage Act (UPA), §§ 19-4-101 to -130, C.R.S. 2025.  We affirm.

## I.    Background

¶ 2    In April 2024, the Boulder County Department of Housing and Human Services (the Department) received a report that V.I.G. (mother) was intoxicated and shoved V.G., who called the police, resulting in mother's arrest for child abuse.  A caseworker from the Department responded to the home, where V.G.'s siblings, O.S. and R.S.G., also resided.  The caseworker reported that she identified and contacted O.S.'s biological father, E.S., but could not identify or contact V.G. and R.S.G.'s fathers.  E.S. agreed to take all three children into his home.

¶ 3    The Department then filed a petition in dependency or neglect, naming E.S. as O.S.'s father and A.R. as R.S.G.'s father; the Department indicated that V.G.'s father remained unknown.  E.S. admitted to the allegations in the petition, and the juvenile court adjudicated O.S. dependent or neglected as to him.  At a dispositional hearing, E.S. then asserted that he should be declared

V.G. and R.S.G.'s legal father, and the court directed him to move for a paternity adjudication, which he did.

¶ 4 The juvenile court set the matter for an evidentiary hearing in December 2024. As pertinent to this appeal, the Department asserted that V.G.'s parentage had already been adjudicated and offered a certified copy of an Oregon paternity judgment (Oregon judgment) establishing that E.S. was not V.G.'s father. After hearing the evidence, the court determined that (1) the Department rebutted by clear and convincing evidence E.S.'s presumption under the UPA that he was V.G.'s father based on his marriage to mother with evidence of the Oregon judgment and (2) E.S. had not established that he was entitled to the presumption of parentage based on his receiving the children into his home and holding them out as his natural children.

## II. Admission of the Oregon Judgment

¶ 5 E.S. asserts that the juvenile court erred by admitting into evidence a copy of the Oregon judgment declaring that he was not V.G.'s father. We disagree.

## A. Standard of Review

¶ 6    We review a juvenile court's evidentiary rulings for an abuse of discretion. *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 32. The court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *People in Interest of A.N-B.*, 2019 COA 46, ¶ 9.

## B. Analysis

¶ 7    At the evidentiary hearing, the Department moved to admit the Oregon judgment declaring that E.S. was not V.G.'s legal father. As pertinent to this appeal, E.S. objected based on "authenticity and rule of completeness" grounds. The court overruled the objection and admitted the exhibit, finding that the two-page document was "certified to be [an] accurate cop[y]" and "appears to be a complete copy."

¶ 8    On appeal, E.S. argues that the court erred by admitting the Oregon judgment because it was not properly authenticated. We disagree.

¶ 9    Under CRE 902(4), copies of public records are self-authenticating and require no extrinsic evidence to prove their authenticity if they are "certified as correct by the custodian or

3

other person authorized to make a certification, by certificate complying with paragraph (1), (2), or (3) of this rule." CRE 902(2) contemplates certification by the signature of a person in their official capacity accompanied by a certification, under seal, of an appropriate public officer having a seal that the signer has the official capacity and that the signature is genuine.

¶ 10     In this case, the Oregon judgment was certified as a true and correct copy by the trial court administrator of Washington County, Oregon, a person authorized to make such certifications. The administrator signed the document and submitted it under seal of the State of Oregon's Judicial Department. Therefore, the document was self-authenticating under CRE 902(2) and (4). *See People v. Shepherd*, 43 P.3d 693, 700 (Colo. App. 2001) (determining that certified copies of a California judgment of conviction were self-authenticating under CRE 902).

¶ 11     We are not persuaded to reach a different conclusion based on E.S.'s assertion that the exhibit "did not appear on its face to be a complete copy." Specifically, E.S. notes that both pages of the two-page document were paginated as "Page 2" and the paragraph numbers across the two pages skipped from paragraph one to

paragraph four. The juvenile court determined that, despite the internal discrepancies, the document appeared to be complete. Specifically, the court noted that the Department had attempted to obtain the document "multiple times" and received the same certified copy. The court had also "invited anyone disputing the authenticity to get their own copies," and no one had submitted something different.

¶ 12 Our review of the document supports that the court did not abuse its discretion by admitting the Oregon judgment. Besides the numbering discrepancies, the document does not read as if any information is missing from the Oregon judgment. The Oregon judgment references another court order of July 2, 2013, but that order appears to deal with mother, and E.S. makes no argument that the July 2013 order is pertinent to or necessary for completeness in adjudicating his parentage as to V.G. Therefore, under these circumstances, we cannot say that the court abused its discretion.

¶ 13 Finally, we decline to address E.S.'s argument that, even if the document was self-authenticating, the juvenile court should have excluded it under CRE 803(8) because it lacked trustworthiness.

5

E.S. did not raise this issue at the evidentiary hearing, *see People v. Ujaama*, 2012 COA 36, ¶ 37 (an issue is unpreserved if an objection was made in the trial court but on grounds different from those raised on appeal), and we do not consider issues raised for the first time on appeal, *see People in Interest of M.B.*, 2020 COA 13, ¶ 14. Although E.S. argued in his pretrial pleadings that the document was inadmissible hearsay, he did not reraise hearsay at the hearing, *see In re Marriage of Corak*, 2014 COA 147, ¶ 23 ("A litigant who abandons an argument in the trial court likewise abandons it for the purposes of appeal."), or make a specific objection based on a lack of trustworthiness, *Ujaama*, ¶ 37 (an objection made on "unspecific grounds" is unpreserved).

## III.    Parentage Presumptions

¶ 14    E.S. contends that the juvenile court erred by concluding that he had not established one of the presumptions of parentage in section 19-4-105(1), C.R.S. 2025.  We disagree.

### A.    Standard of Review and Applicable Law

¶ 15    We review de novo whether the juvenile court applied the correct legal standard.  *People in Interest of K.L.W.*, 2021 COA 56,

¶ 42.  But we defer to the court's factual findings if they are supported by the record.  *Id.*

¶ 16    A juvenile court may determine a child's parentage as part of a dependency or neglect proceeding.  *People in Interest of J.G.C.*, 2013 COA 171, ¶ 10.  However, when a parentage issue arises in a non-parentage proceeding, such as this dependency or neglect case, the court must follow the procedures outlined in the UPA.  *See People in Interest of O.S-H.*, 2021 COA 130, ¶ 40.

¶ 17    First, the juvenile court must determine whether one of the statutory presumptions of parentage in section 19-4-105(1) applies.  *People in Interest of C.L.S.*, 313 P.3d 662, 666 (Colo. App. 2011).  As pertinent to this appeal, a person is a presumed parent if (1) the person and the parent who gave birth to the child were married and the child was born during the marriage, § 19-4-105(1)(a) (marriage presumption); or (2) "the person receives the child into the person's home and openly holds out the child as the person's natural child," § 19-4-105(1)(d) (holding out presumption).  If presumptions are established, parties may rebut them by clear and convincing evidence.  § 19-4-105(2)(a).

¶ 18    Second, if competing presumptions remain after the initial step, the court must then "resolve the competing parentage presumptions and determine which should control based on the weightier considerations of policy and logic." *See K.L.W.*, ¶ 70. The result of this process is to render one person the child's legal parent, while the other person becomes a "nonparent." *C.L.S.*, 313 P.3d at 667.

## B.    Parentage of V.G.

¶ 19    E.S. argues that the juvenile court erred by determining that (1) the Department presented clear and convincing evidence to rebut the marriage presumption and (2) he did not establish the holding out presumption. As explained below, because the Oregon judgment had already established that E.S. was not V.G.'s father, the court did not need to address the presumptions. Therefore, we affirm the court's judgment, albeit on different grounds. *See Blood v. Qwest Servs. Corp.*, 224 P.3d 301, 329 (Colo. App. 2009) (noting that an appellate court "can affirm on any ground supported by the record").

¶ 20    Section 19-4-109(1.5), C.R.S. 2025, provides that "[a] paternity determination made by another state, whether established through

voluntary acknowledgment, administrative processes, or judicial processes, shall be enforced and otherwise treated in the same manner as a judgment of this state." Section 19-4-116(1), C.R.S. 2025, also provides that "[t]he judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes." Applying these statutes to this case, the juvenile court had to treat the Oregon judgment as if it was a judgment of this state, and as a judgment of this state, the Oregon judgment was "determinative for all purposes" as to the parentage of V.G. Therefore, the Oregon judgment of nonpaternity was dispositive, and the juvenile court did not need to consider the presumptions in section 19-4-105(1) before it rejected E.S.'s parentage claim.

¶ 21 Nevertheless, E.S. maintains, for the following three reasons, that the juvenile court erred by applying section 19-4-109(1.5). We are not persuaded.

¶ 22 First, E.S. contends that he did not receive proper notice of the Oregon proceeding. *See In re Marriage of Lohman*, 2015 COA 134, ¶ 28 ("A judgment entered without personal jurisdiction is void in the forum state and is not entitled to full faith and credit by any United

States court."). In support, E.S. testified that he knew nothing about the nonpaternity judgment and that he did not live at the location listed in the service of process. But the court did not find this testimony credible, noting that the court documents submitted by the Department indicated that E.S. appeared in the case, was represented by counsel, and submitted to a genetic test. Because we must defer to the court's credibility determination when, as here, it is supported by the record, we reject E.S.'s assertion. *See People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).

¶ 23 Second, we disagree with E.S.'s claim that, because the Oregon judgment is a *nonpaternity* determination rather than a "paternity determination," section 19-4-109(1.5) does not apply. We acknowledge that section 19-4-109(1.5) refers only to a "paternity determination." But reading the UPA as a whole, *see People in Interest of S.A.*, 2022 CO 27, ¶ 4, we are persuaded that the phrase "paternity determination," as used in section 19-4-109(1.5), includes judgments determining both "the existence or nonexistence" of a parent-child relationship. § 19-4-116(1) (describing the effect of a judgment or order); *see also* § 19-4-107(2), C.R.S. 2025 (noting that a party can bring an action "for the

10

purpose of determining the existence or nonexistence of the father and child relationship" based on a presumption in section 19-4-105).

¶ 24 Third, E.S. maintains that, even if the Oregon judgment precluded him from raising the marriage presumption, it did not preclude him from raising the holding out presumption. We disagree because a judgment determining the nonexistence of a parent-child relationship under section 19-4-116(1) is "determinative for all purposes." Therefore, the court did not need to consider whether any of the presumptions applied. As a result, we need not address E.S.'s argument as it relates to the holding out presumption as to V.G.

### C. Parentage of R.S.G.

¶ 25 E.S. also contends that the juvenile court erred by concluding that he had failed to establish the holding out presumption with respect to R.S.G. We disagree.

¶ 26 The court found that, although E.S. had a "close relationship" with R.S.G. and R.S.G had "referred to him as dad," E.S. had not "welcomed [R.S.G] into his home and held him out as his child." The court noted that the evidence showed that E.S. had cared for

11

R.S.G. in mother's home, but he did so "only on a temporary basis." The court also determined that there was "no evidence that [E.S.] had held himself out to others as [R.S.G.'s] father."

¶ 27    E.S. contends that the juvenile court erred because it "fixat[ed] narrowly on the question of exactly when E.S. and [R.S.G.] had lived together." We are not persuaded.

¶ 28    He points to evidence that he had a close relationship with the child and the child called him "dad." But the court considered this evidence and was more persuaded by the lack of evidence that E.S. represented to others that the child was his natural child. Because the record supports these findings, we cannot reweigh the evidence or substitute our judgment for that of the juvenile court. *See K.L.W.*, ¶ 62. Therefore, although E.S. had lived with mother in her home for temporary periods, the court did not err by holding that E.S. had never "receive[d] the child into [his] home" as required by section 19-4-105(1)(d). *Cf. In re Parental Responsibilities Concerning A.D.*, 240 P.3d 488, 491 (Colo. App. 2010) (noting that the evidence established a presumption under subsection (1)(d), where the father "publicly acknowledged [the child] as his natural child").

¶ 29    Finally, we agree with the juvenile court's conclusion that E.S. could not establish the holding out presumption based on events that happened *after* the Department placed R.S.G. with him during the dependency or neglect case.  If we were to adopt E.S.'s position, a court could sidestep the termination and adoption statutes by declaring a foster parent or kinship placement the child's legal parent by way of the holding out presumption.  Such an interpretation would lead to an absurd result and could not be the General Assembly's intent in enacting the holding out presumption. *See J.G.C.*, ¶ 10 (reviewing courts must avoid interpretations of statutes that lead to an absurd result).

¶ 30    In sum, E.S. did not establish that he was a presumed father under section 19-4-105(1)(d), and the burden did not shift to the opposing party to rebut the presumption.  *See* § 19-4-105(2)(a); *C.L.S.*, 313 P.3d at 666 ("Once presumptions are established, they may be rebutted by clear and convincing evidence.").  As a result, this case did not involve any competing presumptions.  *See* § 19-4-105(2)(a); *K.L.W.*, ¶ 70.  Ultimately, because the record supports the juvenile court's findings and its legal conclusions comport with

applicable law, we decline to disturb its judgment determining that E.S. was not R.S.G.'s father.

## IV. Conclusion

¶ 31 The judgment is affirmed.

JUDGE HARRIS and JUDGE SCHOCK concur.